Grafton
No. 87-191

THE STATE OF NEW HAMPSHIRE

v.

GEORGE WOODS

August 5, 1988

*Stephen E. Merrill*, attorney general (*Kathleen A. McGuire*, assistant attorney general, on the brief and orally), for the State.

*A. John Mazella*, of Lyman, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant, George Woods, appeals from his conviction after a jury trial in Superior Court (*Smith*, J.) of felonious sexual assault on his seven-year-old niece. RSA 632-A:3, III. The primary focus of this appeal is the admissibility of the child's hearsay statements presented through the testimony of her mother, brother, and physician. We reverse.

On the afternoon of June 4, 1986, the alleged victim went to the defendant's home after school, as she had done nearly every day with her brothers, cousins, and other neighborhood children. The defendant was home early from work that day in order to care for the children, permitting his wife to take their two daughters to the dentist at about 3:30 p.m. Mrs. Woods did not return until nearly 5:00 p.m.

It is within this time period that the alleged events occurred. The child testified on direct examination through a video tape deposition, *see* RSA 517:13-a (Supp. 1987), that she was sexually abused while alone with the defendant in the basement of his house. Using language befitting that of a child, she stated that the defendant had pulled her clothes down and touched her with his finger in her vaginal area. Her further testimony suggested digital penetration (although a subsequent physical examination indicated otherwise). Her testimony also suggested that while touching her the defendant fondled his own genitals through his clothes with his other hand. The child also stated that she had told her older brother about the incident that night and had told her mother the next day.

The child's eleven-year-old brother also testified through a video tape deposition. His only pertinent testimony centered on what his sister had told him concerning what the defendant had done to her.

The child's mother, Alice Hill, testified at trial that her daughter had told her that the defendant had touched her in the vaginal area. Mrs. Hill stated that she was sitting at her kitchen table on the evening of June 5, and heard the child's brother arguing with her to the effect that "if you don't tell her, I'll tell her." At that point, the young girl approached her mother and said, "Ma, I got to tell you something. George has been playing with my private area." Because the defendant's daughters were in the room at the time, Mrs. Hill told the child that they would "discuss it some other time;" later that night she ascertained that the alleged incident had taken place the previous day. In an attempt to determine whether her daughter was telling the truth, Mrs. Hill told her that "if she was lying . . . she'd go to jail." The child did not change her story.

Mrs. Hill then informed her sister, the defendant's wife, of the accusations. The two spoke to the girl and again threatened that she would go to jail if she was lying. Mrs. Woods also said that she would have to divorce the defendant if what the child said was true. Her story remained unchanged.

Mrs. Woods confronted the defendant at their home. Mrs. Hill joined them later in the evening, and the three discussed the allegations. The defendant denied having improperly touched the child. The three then devised a plan designed to elicit the truth from her. The defendant was to confront the child alone while the two women surreptitiously listened to the conversation. The plan was carried out the next day. When the defendant eventually asked the child why she had lied about him, she responded with only a shrug. The two women then entered the room and, in front of the defendant, Mrs. Hill asked her daughter if she was sure the defendant did this to her. The child said yes.

Later that day, Mrs. Hill telephoned Dr. Patricia Glowa, a family practitioner, and asked if there was anything she could do to determine whether her daughter was telling the truth. The child visited Dr. Glowa on June 10, at which time Dr. Glowa asked her a series of questions about the alleged abuse. The girl identified the defendant and described the things he had done to her. A subsequent physical examination revealed no evidence of vaginal penetration or other abuse. At trial, Dr. Glowa testified as to the statements the child had made to her, the child's demeanor, and the results of the physical examination. She concluded, notwithstanding the lack of physical evidence, that the child had been sexually abused.

Prior to trial, the defendant moved to suppress the testimony of Mrs. Hill, the brother, and Dr. Glowa on the grounds that the statements the child made to them were inadmissible hearsay and posed constitutional problems under the confrontation clauses of the State and Federal Constitutions. In denying the motion, the trial court admitted the hearsay testimony of all three witnesses. The testimony of the brother, which the trial court considered "blatant hearsay," was nevertheless admitted in deference to a previous ruling by the presiding judge (*Dunn*, J.) at the video tape deposition. Neither judge provided a reason on the record for admitting the brother's testimony. In admitting Mrs. Hill's testimony the trial court reasoned that "even though [her] testimony may be hearsay, it is reliable hearsay, and it also may fall within the realm of excited utterances." *See* N.H. R. Ev. 803(2). The trial court went on to find that, even though at least a day had elapsed between the event and the statement, it was reasonable to qualify the statement as an excited utterance. Dr. Glowa's testimony was admitted, under New Hampshire Rule of Evidence 803(4), as consisting of statements given for the purpose of medical diagnosis or treatment.

The defendant reasserts on appeal his hearsay and confrontation claims with respect to the three witnesses. In addition, the defendant challenges the propriety of allowing Mrs. Hill and two investigating police officers to testify when they had no personal knowledge of the incident, and when their mere presence at trial, according to the defendant, would unfairly prejudice him. Because we reverse the defendant's conviction on the ground that the trial court erroneously admitted the hearsay testimony of the mother, the brother, and the doctor, we need not address the merits of defendant's remaining evidentiary and constitutional claims.

▮▮▮ Hearsay is generally defined as an extrajudicial statement offered in court to show the truth of the matter asserted in the statement. N.H. R. Ev. 801(c); *State v. Bonalumi*, 127 N.H. 485, 487, 503 A.2d 786, 787 (1985) (citing *State v. Jansen*, 120 N.H. 616, 617, 419 A.2d 1108, 1109 (1980)). The rule against hearsay holds that hearsay evidence is generally inadmissible, N.H. R. Ev. 802, subject to certain well-delineated exceptions. *See* N.H. Rs. Ev. 803, 804; *State v. Bonalumi supra*. Whether one of these exceptions applies, thus permitting admission of the hearsay evidence, is an issue for the trial court, and we will not disturb that court's decision unless it is clearly erroneous. *State v. Bonalumi supra*.

The defendant argues that Mrs. Hill's hearsay testimony does not fall within any exception to the rule against hearsay and was therefore inadmissible. He argues that the child's statements to her mother were not admissible as excited utterances despite the trial court's finding that the one-day period between the alleged event and the statements did not preclude qualifying those statements as such. He contends that this is the case because the evidence does not support the necessary findings that the statements were a spontaneous reaction to a startling event. The State argues, on the other hand, that the contemporaneity of the statements to the event is only one factor to be considered, and the child's statements here are otherwise reliable and come within the excited utterance exception, under the circumstances of this case, and were therefore properly admitted. The State concedes that the mother's testimony as to the child's statements is hearsay.

The excited utterance exception permits the admission of a hearsay statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.H. R. Ev. 803(2). The theory underlying this rule has been articulated as follows:

> "[T]he circumstances under which the utterance was made afford a guarantee of truth in substitution for that provided by oath and cross-examination. To provide this substitute guarantee it must appear to the satisfaction of the presiding justice that the utterance was a spontaneous verbal reaction to some startling or shocking event, made at a time when the speaker was still in a state of nervous excitement produced by that event, and before he had time to contrive or misrepresent."

*State v. Kenna,* 117 N.H. 305, 307, 374 A.2d 427, 429 (1977) (quoting *Semprini v. Railroad,* 87 N.H. 279, 280, 179 A. 349, 350 (1935)).

At least two aspects of this case remove the hearsay statements at issue from the realm of excited utterance. The first is the lack of contemporaneity between the alleged incident and the statements. The child did not tell her mother about the assault until the next day. As a result, there was simply too much time for reflective thought. *Compare State v. Lynch,* 94 N.H. 52, 53, 45 A.2d 885, 886 (1946) (statement made by nine-year-old to mother four days after alleged sexual assault, and after talking with sheriff about the incident, not spontaneous) *with State v. Bonalumi,* 127 N.H. at 489, 503 A.2d at 789 (one-hour lapse) *and State v. Plummer,* 117 N.H. 320, 325, 374 A.2d 431, 434 (1977) (three to four hours).

■ Of course, we have recognized, as the State points out, that the contemporaneity element of the exception is only a factor to be considered in determining whether to qualify a statement as an excited utterance. *State v. Plummer supra*. Although this requirement of temporal proximity is designed to foreclose any opportunity for the declarant to contrive or misrepresent the facts, *Plummer, supra* at 324, 374 A.2d at 434, a delayed statement may still have had its "source in such continuing excitement that spontaneity exists," *State v. Bonalumi, supra* at 487, 503 A.2d at 788 (quoting *Bennett v. Bennett,* 92 N.H. 379, 386, 31 A.2d 374, 380 (1943)), sufficient to justify a departure from requiring strict contemporaneity.

■ The record before us, however, is barren of any evidence establishing or suggesting that the child's statements to Mrs. Hill were made while under the continuing stress of nervous excitement that would insure spontaneity and warrant a departure from the contemporaneity requirement. Although there is some evidence that the child was troubled by the decision to tell her mother, as is revealed by the threats of her brother to tell if she did not, this is not sufficient to give rise to the conclusion that she was laboring under such stress as to preclude a conscious statement. *Compare State v. Coppola,* 130 N.H. 148, 154, 536 A.2d 1236, 1240 (1987) (declarant upset, excited and hysterical, and "raving"), *State v. Bonalumi, supra* at 488, 503 A.2d at 788 (declarant "upset and speaking spontaneously and probably angrily") *and State v. Kenna,* 117 N.H. at 308, 374 A.2d at 430 (declarant "very excited") *with State v. Shannon,* 125 N.H. 653, 660, 484 A.2d 1164, 1170 (1984) (no evidence that robbery scene witnesses were in a state of nervous excitement when they gave description of suspect). Thus, despite the trial court's finding that "it is reasonable to say that if the mother testifies that the alleged victim told her within one day that that would qualify in my opinion as an excited utterance," the facts of this case do not support the admission of Mrs. Hill's hearsay testimony under the excited utterance exception.

■ This analysis applies with equal force to the brother's testimony. Although the child told her brother about the alleged incident later the same day, there are no facts to suggest that she did so under the stress of nervous excitement produced by a startling event. The brother's hearsay testimony is therefore inadmissible as an excited utterance.

■■ The State argues in the alternative that the brother's testimony was admissible as a prior consistent statement to rebut the defendant's cross-examination of the girl through which he challenged her testimony. A prior consistent statement is admissible when it is "consistent with the declarant's testimony [at trial] and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . ." N.H. R. Ev. 801(d)(1)(B). In this case, the defendant's cross-examination of the victim created no express or implied charge of recent fabrication. Thus, the necessary predicate for admission under Rule 801(d) is not present. Nor did the cross-examination adduce any prior inconsistent statement, thus implicating the rule in *State v. Koski*, 120 N.H. 112, 115, 411 A.2d 1122, 1124 (1980) (prior consistent statement not admissible in absence of evidence of prior inconsistent statement). Therefore, the brother's testimony was not admissible as a prior consistent statement.

The defendant further challenges the admissibility of Dr. Glowa's testimony with respect to the statements the child made to her describing the incident and identifying the defendant. He claims that the trial court failed to make the requisite affirmative finding of trustworthiness of the statements under Rule 803(4), and that a hearing should have been held on this issue. He argues further that, on these facts, the trial court could not have found the statements to be trustworthy since the child was brought to the doctor by her mother, even though the child was complaining of no physical symptoms or pain. The State argues that the defendant did not request a hearing on this issue and cannot do so now, and that, in any event, the rule does not require an affirmative finding of trustworthiness when the statements are made to a physician, since to do so would be redundant given the underlying rationale of the rule. Even if such a finding is required, the State asserts, the trial court has made a sufficient finding in this case which is supported by the record.

The medical diagnosis or treatment exception to the rule against hearsay provides:

> "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were

made under circumstances indicating their trust-worthiness."

N.H. R. Ev. 803(4).

■ The underlying purpose of this exception is that statements made with the purpose of obtaining medical attention in the form of diagnosis or treatment are inherently reliable because such statements are made usually with the motivation to obtain an accurate diagnosis or proper treatment; there is normally no incentive to fabricate. J. WEINSTEIN & M. BERGER, 4 WEINSTEIN'S EVIDENCE ¶ 803(4)[01], at 803-144 (1987) (commenting on analogous federal rule); see Norris v. Haverhill, 65 N.H. 89, 89–90, 18 A. 85, 86 (1888).

■ In this case, we need not address the specific arguments raised because we see a more fundamental reason for the inapplicability of this exception. The rule states that only statements given for the "purposes of medical diagnosis or treatment" are potentially admissible under this exception. Here, the statements were not made for the purpose of obtaining medical attention. Mrs. Hill's stated purpose in bringing the child to Dr. Glowa was to determine whether she was telling the truth about the alleged assault. Neither the child nor the mother expressed any interest in obtaining medical treatment from Dr. Glowa. Indeed, the mother expressed only an interest in gathering evidence about the alleged incident. Thus, it cannot be said that the statements by the child to Dr. Glowa were made for the purposes of medical diagnosis or treatment, and they were therefore inadmissible under the Rule 803(4) exception.

■ Given the obviously damaging nature of the hearsay testimony, we cannot conclude that the erroneous admission of the statements was harmless beyond a reasonable doubt, *State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976), and we accordingly reverse the defendant's conviction.

*Reversed.*

All concurred.