Rockingham
No. 90-345

THE STATE OF NEW HAMPSHIRE

v.

ROBERT A. McLAUGHLIN, SR.

June 25, 1992

*John P. Arnold*, attorney general (*David S. Peck*, assistant attorney general, on the brief and orally), for the State.

*Murphy, McLaughlin & Hemeon P.A.*, of Laconia (*Janice L. McLaughlin* and *Philip T. McLaughlin* on the brief, and *Mr. McLaughlin* orally), for the defendant.

BATCHELDER, J.  In this appeal from his convictions for first degree murder and conspiracy to commit murder, the defendant raises the following issues: (1) whether the Superior Court (*Temple*, J.) erred in its instructions to the jury; and (2) whether introduction of his wife's inculpatory statements to the defendant's son under New Hampshire Rule of Evidence 804(b)(3) violated his federal and State constitutional confrontation rights. We find no error and affirm.

On the night of June 1, 1988, Robert Cushing was shot and killed at his home in Hampton. The defendant, then a Hampton police officer, lived directly behind the Cushing residence. One day in mid-July 1988, the defendant's twenty-five-year-old son, Robert Jr., stopped in to see his father. After a brief bit of casual conversation, the defendant admitted to his son that he had killed Robert Cushing. The defendant explained that he had held a grudge against Cushing for the past fourteen years arising out of the latter's involvement in an attempt to have him fired for police brutality. Then, as he told his son, one night while watching television he decided "to pay this guy back," and told his wife, Susan, he was going to kill Cushing. Susan told him he would need a plan and disguises in order to avoid being caught. After Susan and he disguised themselves, the defendant got his shotgun, and she a long wooden club, known as a karate staff. Susan then drove the defendant the short distance to the Cushing home and, while she stood guard, the defendant walked up to the

door and shot Robert Cushing. The defendant and his wife ran back to the car and drove off, getting rid of the gun, and then drove home.

Shortly after the defendant recounted these events to his son, his wife came home. The defendant told Susan that he had told Robert Jr. "everything," and reassured her that his son would not tell anyone. Susan said she knew Robert Jr. would keep quiet, and then proceeded to tell him of the murder in a manner consistent with the defendant's description. She added details about the disguises they had worn, stating that on her advice the defendant had worn all black, and that she had worn loose clothing and tied-back hair. Her disguise, she told Robert Jr. confidently, had resulted in a description in the newspaper of a young man in his early twenties observed running from the scene.

On August 26, 1988, the defendant confessed the killing to his friend, Officer Victor DeMarco, at the defendant's home. Officer DeMarco then drove the defendant to the hospital at Pease Air Force Base, and the defendant told him en route that Susan had been at the murder scene. Susan was eventually charged with and convicted of conspiracy and accomplice to murder for her involvement. *See State v. Cook*, 135 N.H. 655, 610 A.2d 800 (1992).

At his trial on charges of first degree murder and conspiracy to commit murder, the defendant raised the defense of insanity. He was convicted of both charges and now appeals.

The defendant first complains that the trial court erred in its charge to the jury when, after instructing on all the elements of the offenses, including the State's burden to prove beyond a reasonable doubt that the defendant acted with premeditation and deliberation, and explaining the defendant's burden to prove insanity, the court stated, "You will recall we've discussed the fact that under the first degree murder charge a specific intent, the purposeful act, premeditation and deliberation was shown, been shown beyond a reasonable doubt." Claiming that this instruction impermissibly removed from the jury the element of specific intent, the defendant contends that he was denied a fair trial.

■ No objection to this language was made at trial. We see no reason to depart from our well-established rule, recently reaffirmed in *State v. McAdams*, 134 N.H. 445, 594 A.2d 1273 (1991), that an objection below is required in order to preserve an issue for appellate review. The defendant's attempt to distinguish *McAdams* based on his paramount right to a fair trial is not persuasive; McAdams himself argued the right to an exception to our rule for his claim that

he was convicted on legally insufficient evidence, an issue that went to "[t]he very essence of a criminal trial . . . ." *Id.* at 453, 594 A.2d at 1278 (Batchelder and Johnson, JJ., concurring). We will not consider the merits of this claim of error.

■ The defendant next claims that the introduction into evidence of his wife's inculpatory statement to his son under the statement against interest exception to the hearsay rule, N.H. R. Ev. 804(b)(3), violated his State and federal constitutional rights to confront the witnesses against him. At the outset we must address the State's argument that this issue is not properly before us because the defendant did not object at the time the evidence was offered at trial. Consistent with our recent decision in *State v. Simonds*, 135 N.H. 203, 205, 600 A.2d 928, 929 (1991), where the State's identical argument was rejected, we hold that the defendant's pretrial motion in limine to exclude the evidence was adequate to preserve the issue for appellate review and that a contemporaneous objection at trial was not required. *See also State v. Parra*, 135 N.H. 306, 604 A.2d 567 (1992).

A second preliminary matter concerns the State's argument, made for the first time on appeal, that the statement at issue constituted an adoptive admission by the defendant under New Hampshire Rule of Evidence 801(d)(2)(B) and was thus not hearsay at all. Claiming that the defendant plainly manifested his adoption of Susan's statement made in his presence, the State seeks to circumvent the rule of *State v. Santana*, 133 N.H. 798, 807–09, 586 A.2d 77, 83–84 (1991), requiring the State to raise at trial alternative grounds of admissibility in order to rely on them on appeal. We decline the State's invitation to reach this issue.

■ Susan's statement to Robert Jr. implicating herself in the murder of Robert Cushing was "[a] statement which . . . at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in this position would not have made the statement unless the person believed it to be true." N.H. R. Ev. 804(b)(3). That Susan was unavailable as a witness at the defendant's trial is not disputed. *See* N.H. R. Ev. 804(b) (requiring unavailability of declarant). Her statement thus falls within the hearsay exception for statements against penal interest, notwithstanding that it also inculpated the defendant. *Cook*, 135 N.H. at 660, 610 A.2d at 803; *State v. Kiewert*, 135 N.H. 338, 345, 605 A.2d 1031, 1035–36 (1992). The only real question is whether, given the statement's admissibility under an exception to the hearsay rule, the in-

troduction of this evidence nonetheless infringed the defendant's constitutional rights of confrontation. *Cook, supra* at 660–61, 610 A.2d at 803–04. Although the defendant raises this issue under both the sixth amendment and part I, article 15, we have today held that the Federal Constitution provides no greater protection than does the State Constitution in this area. *See Cook, supra* at 661, 610 A.2d at 804. Thus, we address this issue only under the State Constitution. *See Cook supra.*

In *Cook*, we held that the confrontation clause is not violated by the introduction of a statement against interest inculpating another where the statement "possess[es] 'particularized guarantees of trustworthiness.'" *Id.* at 662, 610 A.2d at 804 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)). We turn to an analysis of the circumstances surrounding the making of Susan's statement, *see Cook, supra* at 663, 610 A.2d at 805; *Kiewert*, 135 N.H. at 357, 605 A.2d at 1043 (Brock, C.J. dissenting), to determine whether it is "'so trustworthy that adversarial testing would add little to [its] reliability.'" *Cook, supra* at 662, 610 A.2d at 804 (quoting *Idaho v. Wright*, 497 U.S. 805, —, 110 S. Ct. 3139, 3149 (1990)).

■ The trial court heard Robert Jr.'s testimony at a pretrial hearing and determined that Susan's statements passed constitutional muster because they had "been shown to be reliable and trustworthy." The court found six separate indicia of reliability: (1) the statements tended to expose the declarant "to serious criminal liability"; (2) the statements were based on her personal knowledge of the homicide as "established by the statements and her prior conviction for that crime"; (3) the statements were made only a few weeks after the homicide, making it "unlikely that . . . Susan was relying upon a faulty recollection of events"; (4) the statements were made to "the defendant's son, spontaneously in the privacy of the family home" and "in the context of [a] family discussion," an unlikely occasion for Susan "to misrepresent or to implicate her then-husband to his son in a crime the defendant had not committed"; (5) "[t]he statements were made prior to any arrests or indictments" at a time when the defendant and his wife "were not even suspected of having committed the crime"; and (6) "Susan was not in custody when she made the statements, nor are she and the defendant being tried jointly." These findings with respect to the reliability of the statements will not be overturned unless clearly erroneous. *Cook, supra* at 662, 610 A.2d at 805 (citing *State v. Richards*, 129 N.H. 669, 674, 531 A.2d 338, 341–42 (1987), and *State v. Mallar*, 127 N.H. 816, 818, 508 A.2d 1070, 1071 (1986)).

■ Although reliability may not be predicated solely on the first factor because it simply restates the fact that the statement fell into Rule 804(b)(3), *see Cook, supra* at 662–63, 610 A.2d at 805, we believe that the remaining findings by the trial court accurately reflect the evidence and more than amply support the determination of the statement's reliability. For instance, according to Robert Jr., Susan was "really keyed up" when she related to him the events surrounding the killing, several weeks after it had occurred. Spontaneity and temporal proximity to the event are factors supportive of a finding of reliability. *See Cook, supra* at 664, 610 A.2d at 805.

■ Moreover, the last three indicia identified by the trial court, considered together, particularly demonstrate reliability. First, they combine to illustrate that the circumstances in which Susan made the statements against her own interest were not such as to raise a presumption of unreliability. Such a presumption often arises when an accomplice implicates a defendant to the authorities because of "the basic understanding that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination." *Lee v. Illinois*, 476 U.S. 530, 541 (1986). Susan's admissions of the defendant's and her own culpability, in contrast, were not made in circumstances that would provide such a motive for her to lie. Rather, they were made in the benign setting of her own home, in front of her husband, to his son, at a time when she was under neither arrest nor suspicion. Whatever presumption of unreliability may attach to "arrest statements of a codefendant," *id.* (citation omitted), is simply not present here.

In addition, the environment in which Susan made the admissions as well as their tone and content provide reason to credit the statements as reliable. Only after the defendant revealed that he had already told his son "everything" did Susan speak to her stepson, whose familial relationship with her "enhanced the reliability of the statement . . . ." *Kiewert*, 135 N.H. at 345, 605 A.2d at 1035. According to Robert Jr., when Susan described the events surrounding the murder, she "bragged the whole time" and "wasn't worried about getting caught." We agree with the trial court that Susan's statements to the defendant's son "do carry with them substantial badges of reliability which indicate [their] trustworthiness," rendering cross-examination of the declarant "of marginal utility," *Idaho v. Wright*, 497 U.S. at —, 110 S. Ct. at 3149.

█ █  Finally, although the defendant suggests that Robert Jr.'s history of mental problems rendered Susan's statements unreliable, his focus on Robert Jr. is off the mark. The reliability analysis looks to the circumstances surrounding the *declarant's* making of the statements. Whether or not Robert Jr. was a reliable reporter of the statements goes to *his* credibility, a matter for exploration by the defendant before the jury. *Cook*, 135 N.H. at 663, 610 A.2d at 805. In sum, the introduction of Susan's statements to Robert Jr. at the defendant's trial was not error.

*Affirmed.*

THAYER, J., with whom HORTON, J., joined, concurred specially; the others concurred.

THAYER, J., concurring specially: Based on my concurrence in *State v. Susan McLaughlin Cook*, 135 N.H. 655, 610 A.2d 800 (1992), I concur in the result only.

HORTON, J., joins in the special concurrence.