Carroll
No. 91-211

## THE STATE OF NEW HAMPSHIRE

v.

## RUSSELL A. ROBERTS

March 25, 1993

*John P. Arnold*, attorney general (*Charles T. Giacopelli*, assistant attorney general, on the brief and orally), for the State.

*Shaheen, Cappiello, Stein & Gordon*, of Concord (*Andru H. Volinsky* on the brief and orally), for the defendant.

JOHNSON, J. After a jury trial in the Superior Court (*Mohl*, J.), the defendant, Russell A. Roberts, was convicted of three counts of witness tampering under RSA 641:5 (1986). We consider the merits of: (1) whether the trial court lacked territorial jurisdiction over a witness tampering count alleging acts that occurred in Canada; (2) whether admission of hearsay statements made by a decedent to a drug counselor and a psychologist was improper under New Hampshire Rule of Evidence 803(4) or violated the defendant's confrontation rights; (3) whether the trial court violated the defendant's confrontation rights or abused its discretion by allowing a witness to assert the privilege against self-incrimination on cross-examination, even though the witness had not asserted the privilege in a pretrial deposition; and (4) whether the trial court should have excluded evidence of the defendant's homosexual relationship with the target of his acts of witness tampering. We affirm.

The defendant's witness tampering convictions arose out of his relationship with Gregory Bryar, II, a seventeen-year-old witness identified in underlying indictments charging the defendant with obscenity, prostitution, and conspiracy to acquire cocaine. The defendant offered a car, money, and an apartment in Canada to induce Bryar to avoid testifying for the State in the underlying prosecutions.

Sometime before March 1987, the defendant, who was about forty-three years old, met Bryar, who was a high school sophomore. Bryar had a history of drug and alcohol abuse. Testimony at trial indicated that the defendant offered Bryar drugs and money in exchange for sex.

In March 1987, the State Police began investigating the relationship between Bryar and the defendant. In April 1987, the district court found Bryar to be delinquent and ordered him to enter the Nathan Brody Chemical Dependency Center (Nathan Brody). At Nathan Brody, Bryar was diagnosed as suffering from drug and alcohol dependency and was treated for substance abuse. During his thirty-day residential treatment at Nathan Brody in April and May 1987, Bryar participated in private therapy with Claire Trottier, an alcohol and drug counselor. The probation officer who brought Bryar to Nathan Brody had alerted Trottier to the ongoing investigation into Bryar's relationship with the defendant. During sessions with Trottier, Bryar admitted to having had sexual relations with the defendant, and to having received cocaine and money for cocaine from the defendant in exchange for sex.

In early May 1987, Bryar contacted the police about his relationship with the defendant. In late May, the State Police searched the defendant's home and arrested him for drug possession and obscenity. In June 1987, the defendant was indicted on charges including prostitution (transporting Bryar to engage in sex for consideration), obscenity (showing an explicit film to a minor male child identified by Bryar's birthdate), and conspiracy (providing Bryar money and transportation to acquire cocaine). All of these indictments identified Bryar as a witness.

In early September 1987, the defendant, Bryar, and Bryar's friend Scott Shedd went to Montreal. Shedd heard the defendant offer Bryar an apartment in Canada to enable him to avoid testifying in the pending "case" against the defendant. Shedd also heard the defendant offer Bryar money and a car so that Bryar would change his testimony. There is evidence that the defendant purchased a car in September 1987. He originally noted that he was buying it for Bryar, but later changed the title application to reflect his own ownership.

In October 1987, Bryar was arrested for attempted extortion from the defendant and was placed in a residential treatment program at Beech Hill Hospital (Beech Hill). At Beech Hill, Bryar was diagnosed as suffering from psychological disorders related to his relationship with the defendant. Bryar participated in private therapy with Dr. Kathleen Bollerud, a psychologist. During sessions in Octo-

ber and November 1987, Bryar discussed with Bollerud his relationship with the defendant and expressed anger and confusion over the defendant's inducements not to testify. Bryar met with a police officer while he was at Beech Hill.

In December 1987, the defendant was indicted on witness tampering charges for attempting to induce Bryar to change his testimony or to elude process by offering him a car, money, and an apartment in Canada. Bryar was not available to testify at the witness tampering trial, and all of the underlying cases were ultimately *nol prossed* because Bryar killed himself in 1988.

In a pair of pretrial rulings after Bryar's death, the Superior Court (*O'Neil*, J.) accepted a waiver of privilege by the administrator of Bryar's estate and found under New Hampshire Rule of Evidence 803(4) that Trottier and Bollerud could testify to Bryar's statements revealing the defendant's provision of drugs or money for sex and concerning the defendant's promises of a car, money, and an apartment. The Trial Court (*Mohl*, J.) did not alter these rulings.

## I. Territorial Jurisdiction

We first consider whether the trial court lacked territorial jurisdiction over an indictment charging that believing "an official proceeding was pending or about to be initiated," the defendant attempted to induce Bryar "to elude legal process . . . by taking [him] to Canada and offering to rent an apartment in Canada." The record indicates that the defendant offered to rent an apartment in Canada for Bryar, so that he could avoid testifying. The defendant argues that the trial court lacked territorial jurisdiction because the indictment charged acts that occurred in Canada.

The defendant raised his jurisdictional argument in a motion to dismiss after the State rested. This motion was denied. The defendant renewed his argument in a post trial motion to dismiss, which was also denied.

Under the State Criminal Code, territorial jurisdiction is defined, for purposes of this discussion, as follows: "[A] person may be convicted under the laws of this state for any offense committed by his own conduct" if "[c]onduct occurring outside this state constitutes an attempt to commit an offense under the laws of this state and the purpose is that the offense take place within this state." RSA 625:4, I(b) (1986).

The criminal act prosecuted under the witness tampering statute and charged in the indictment at issue is the *attempt* "to induce or otherwise cause a person" to "[e]lude legal process," with the belief

that an "official proceeding . . . is pending or about to be instituted." RSA 641:5, I(c) (1986). The record clearly shows that the defendant knew that an official proceeding was pending against him, prior to the September 1987 trip to Canada, because he had been indicted in June 1987 and had entered not guilty pleas.

We find the defendant's jurisdictional argument unavailing. Whether the defendant's attempt to induce or otherwise cause Bryar to elude legal process took place in New Hampshire, in Canada, or both, is of no consequence. The fact remains that the defendant was attempting to pervert New Hampshire's system of justice by distorting the fact finding function of our courts. The witness tampering statute "protects an important public interest in discovering the truth in official proceedings and investigations." *State v. Kilgus*, 125 N.H. 739, 745, 484 A.2d 1208, 1213 (1984). The defendant's conduct, wherever it took place, was intended to frustrate the discovery of the truth in New Hampshire. *See Pennington v. State*, 308 Md. 727, 746, 521 A.2d 1216, 1225 (1987). We hold that the trial court properly denied the defendant's motions because the defendant's conduct vested territorial jurisdiction in this State under RSA 625:4, I(b) as a matter of law.

## II. Hearsay

Bryar's statements, which were admitted through testimony of Trottier and Bollerud for the truth of their assertions, constitute hearsay. N.H. R. Ev. 801. The statements at issue concern the defendant's identity and the promises he made to induce Bryar to elude process or testify falsely. The defendant contends that admission of this hearsay violated his right of confrontation under the State and Federal Constitutions, and that the trial court erred in admitting the hearsay under New Hampshire Rule of Evidence 803(4). We analyze the constitutional question first because we assume that the constitutional requirement that there be "particularized guarantees of trustworthiness," *State v. Cook*, 135 N.H. 655, 662, 610 A.2d 800, 802 (1992) (quotation omitted), is more rigorous than the requirement in New Hampshire Rule of Evidence 803(4) that there be "circumstances indicating" the "trustworthiness" of the hearsay statements.

Consistent with *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 351 (1983), we analyze the constitutional claims advanced by the defendant by considering first whether admitting the hearsay statements in this case violated the defendant's right of confrontation under part I, article 15 of the State Constitution. Part I, article 15

prevents the admission of "hearsay implicating a person other than the declarant" unless there are "'particularized guarantees of trustworthiness.'" *Cook*, 135 N.H. at 662, 610 A.2d at 804 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)); *see also State v. McLaughlin*, 135 N.H. 669, 673, 610 A.2d 809, 811 (1992). This requirement ensures that "'adversarial testing would add little'" to the reliability of the hearsay. *Cook*, 135 N.H. at 662, 610 A.2d at 804 (quoting *Idaho v. Wright*, 497 U.S. 805, 821 (1990)); *see also McLaughlin*, 135 N.H. at 673, 610 A.2d at 811. Here, as in *McLaughlin* and *Cook*, the declarant's availability is not at issue. *See McLaughlin*, 135 N.H. at 672, 610 A.2d at 811; *Cook*, 135 N.H. at 662, 610 A.2d at 804.

■■ Our standard of review is whether the trial court's determination of particularized guarantees of trustworthiness is clearly erroneous. *See Cook*, 135 N.H. at 662, 610 A.2d at 805. In this case, the trial court identified four factors that represent "ample indicia of reliability" surrounding Bryar's statements to Trottier and Bollerud: (1) Bryar made the statements in confidence to persons providing his treatment rather than to the police; (2) Bryar had an "open and honest, professional relationship" with Trottier and Bollerud; (3) Bryar cried spontaneously for twenty minutes when he first admitted to having had a sexual relationship with the defendant; and (4) the statements revealing the defendant's identity and his sexual relationship with Bryar placed Bryar "in a light where others may look unfavorably upon him." We note that the first three of these factors resemble those that we identified as guarantees of reliability in *McLaughlin* and *Cook*. *See McLaughlin*, 135 N.H. at 674, 610 A.2d at 812 (statements made in benign setting); *Cook*, 135 N.H. at 664, 610 A.2d at 806 (statements made spontaneously and reported to trusted persons). The fourth factor, that Bryar identified the defendant as a person with whom he had had a homosexual relationship, also bears on the reliability of his statements. The record reflects that Bryar was afraid of being considered homosexual; a logical inference is that he would not have concocted a story that would enable Trottier and Bollerud to question his sexual preference. We conclude that the trial court properly found particularized guarantees of trustworthiness sufficient to satisfy the requirements of part I, article 15 of the State Constitution.

The defendant argues that the trial court did not properly consider Bryar's tentative commitment to court-ordered therapy, revenge motives, and manipulative behavior. The record supports the court's finding that none of these facts fatally impugned the reliability of the

statements. Bryar participated in private therapy in the inpatient programs and made statements to Trottier and Bollerud to obtain medical treatment. That he had been assured of the confidentiality of his therapy diminished the risk that he fabricated statements to seek revenge by incriminating the defendant.

Furthermore, the record supports the conclusion that Bryar did not make statements to manipulate Trottier and Bollerud. Bollerud's testimony indicates that she did not find Bryar manipulative. Bryar discussed with Trottier and Bollerud details of subjects that were painful to him, including his homosexual relationship with the defendant. Bryar's initial reaction to Trottier's inquiry on whether he had been sexually abused by the defendant was twenty minutes of spontaneous crying. This spontaneous, emotional outburst when the defendant's name first arose diminished the risk that Bryar calculated the effect of admitting to a sexual relationship with the defendant. Even if Bryar arguably believed his conversations with the police improved his chances of receiving a lenient disposition of outstanding charges against him, there is no reason to conclude that he had similar expectations for his confidential statements to Trottier and Bollerud. We find no merit in the defendant's contentions that Trottier and Bollerud improperly disclosed information to the police, and that Bryar improved his status at Nathan Brody or Beech Hill by incriminating the defendant. All relevant facts support the trial court's finding that Bryar's allegedly manipulative behavior did not undermine the reliability of his statements.

The defendant's last contention is that the trial court improperly considered the therapists' testimony that Bryar appeared truthful. Assuming for the sake of argument that the defendant's contention is correct, we nevertheless observe that the trial court found in the four factors noted above ample particularized guarantees of trustworthiness of Bryar's statements to Trottier and Bollerud, and we conclude that this finding was not clearly erroneous. See Cook, 135 N.H. at 662, 610 A.2d at 805. For this reason, we hold that the admission of Bryar's statements incriminating the defendant did not violate the defendant's right of confrontation under part I, article 15 of the State Constitution. Because part I, article 15 affords this defendant at least as much protection from an unconstitutional admission of hearsay as the sixth amendment, cf. White v. Illinois, — U.S. —, — n.8, 112 S. Ct. 736, 742 n.8 (1992) (holding that Rule 803(4) hearsay exception is "firmly rooted" for sixth amendment purposes), we need not embark on an independent federal constitutional analysis. See Cook, 135 N.H. at 661, 610 A.2d at 804.

Finding no constitutional infirmity in the trial court's ruling, we consider whether the court properly applied Rule 803(4). Rule 803(4) carves out an exception to the rule against hearsay for

"[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances indicating their trustworthiness."

N.H. R. Ev. 803(4).

There are three areas of inquiry for a court applying Rule 803(4): the declarant's intent, *see State v. Woods*, 130 N.H. 721, 729, 546 A.2d 1073, 1077–78 (1988); the subject matter of the statements; and whether there are circumstances indicating the trustworthiness of the statements. *See* N.H. R. Ev. 803(4). Whether the statements were made to a physician, a psychologist, or a trained drug counselor is irrelevant, so long as the statements qualify for admission under the rule. *See id.* The trial court has discretion in applying Rule 803(4), and we will not disturb a ruling unless it is clearly erroneous. *Woods*, 130 N.H. at 725, 546 A.2d at 1075.

A court must find first that the declarant intended to make the statements to obtain a medical diagnosis or treatment. *Id.* at 729, 546 A.2d at 1077–78. This finding may be based upon circumstantial evidence. *See State v. Gruber*, 132 N.H. 83, 93, 562 A.2d 156, 162 (1989). During private therapy with Trottier and Bollerud, Bryar revealed the defendant's identity. He also disclosed to Bollerud his anxiety over the promises that the defendant had made to induce him not to cooperate in prosecution of the underlying charges. Bryar was sent to Nathan Brody and Beech Hill for diagnosis and treatment, and was aware of the diagnostic and therapeutic purposes of his private dialogues with Trottier and Bollerud. Bryar was able to acknowledge the dimensions of his drug abuse and mental health problems while at Nathan Brody and Beech Hill. Although he did not always adhere to the treatment regimens, both Trottier and Bollerud testified that he made progress in his therapy. Bollerud identified Bryar's developing ability to discuss with peers at Beech Hill his sexual relationship with the defendant as evidence of this progress,

and she indicated that he appreciated the progress he was making. These facts support an inference that Bryar intended to make the statements at issue for diagnostic and therapeutic purposes.

■ Because Bryar's therapy at Nathan Brody and Beech Hill was court-ordered, and because he expressed a desire to seek revenge against the defendant while he was at Beech Hill, the defendant argues that the trial court erred in finding that Bryar made the statements with an intent to obtain a medical diagnosis or treatment. We agree with the trial court's finding that these facts do not offer conclusive proof of Bryar's intent. Although one can infer that a person who voluntarily visits a doctor intends to obtain medical attention, there is no necessary inference that a person placed by authorities in detoxification and treatment has no intent to secure a medical diagnosis or treatment. That the treatment was court-ordered does not negate a conclusion that the declarant made statements to obtain a medical diagnosis or treatment. In this case, the evidence indicating that Bryar participated in and successfully completed the in-patient programs at Nathan Brody and Beech Hill supports the trial court's finding.

■ Furthermore, Bryar's disclosure at Beech Hill of a desire to seek revenge against the defendant does not imply that he had no intent to obtain medical assistance. Bryar knew that his dialogue with Bollerud was confidential, and that nothing he said about the defendant would be disclosed without his permission. There is no indication that Bryar asked or expected Bollerud to release his statements incriminating the defendant. Bryar revealed his rage and revenge fantasies to Bollerud in response to her attempts to explore his intrusive thoughts. These thoughts afflicted him during the day and disrupted his sleep at night. We conclude that the trial court did not err in inferring from all relevant facts that Bryar intended to make the statements to obtain medical diagnosis and treatment.

■ To be admissible, the statements must describe medical history, or symptoms, pain, sensations, or their cause or source to an extent "reasonably pertinent to diagnosis or treatment." *See* N.H. R. Ev. 803(4). Statements assigning fault for an injury are not generally pertinent to treatment, and statements identifying the person who allegedly harmed a plaintiff or victim are generally inadmissible. *See United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985). Courts have admitted the testimony of psychologists and physicians concerning statements made by patients regarding the identity of the

perpetrator, if such statements are medically necessary for treatment or diagnosis of sexual abuse and other psychiatric or emotional disorders. *See, e.g., id.* at 436–39 (sexual abuse); *State v. Wyss*, 124 Wis. 2d 681, 707–11, 370 N.W.2d 745, 757–59 (1985) (anxiety), *overruled on other grounds by State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990); *see also* 2 MCCORMICK ON EVIDENCE § 278, at 251–52 (J. Strong 4th ed. 1992).

■ Bryar was treated for alcohol and drug dependence at Nathan Brody. According to Trottier, there is a psychological component to treatment for alcohol and drug addiction. Although Trottier indicated that she has had no formal training in the treatment of sexual abuse, she stated that it is important for treatment for a drug and alcohol therapist to inquire into the drug addict's sexual relationships, particularly if the sexual partner has been a source of drugs, or has sexually abused the addict. Trottier testified that an important reason for identifying intimate associates who have supplied a substance abuser with drugs is to screen persons who may or may not be able to offer support during rehabilitation or treatment. In the context of confidential therapy with Trottier addressing his sexual relationships and drug suppliers, Bryar identified the defendant as a sexual partner and as a person who provided cocaine and money in exchange for sex. Trottier also testified that substance abusers may turn to drugs and alcohol to avoid dealing with traumatic incidents or relationships. Revealing these facts to Trottier and the police caused Bryar pain, but Trottier testified that this pain was therapeutic because he was able to "open up" and confront the trauma. On these facts, the trial court could properly find the statements about the defendant's identity not only descriptive of the cause or source of Bryar's symptoms or pain, but also reasonably pertinent to Trottier's treatment for the medical condition of chemical dependence.

■ At Beech Hill, Bryar was diagnosed as suffering from and received treatment for post-traumatic stress disorder (PTSD) and adolescent judgment disorder, as well as drug and alcohol dependence. Bollerud testified that the central trauma precipitating Bryar's PTSD was his relationship with the defendant. Symptoms of PTSD include intrusive thoughts. Bryar explained to Bollerud during their confidential therapy sessions that he suffered from intrusive, disruptive thoughts about his sexual relationship with the defendant, and about how he should respond to the defendant's promises to induce him not to aid the State's investigation. According to Bollerud, ado-

lescent judgment disorder manifests itself in an inability to respond appropriately to stressors. Bryar dropped out of school, an inappropriate response to stress, when his peers derided him for his homosexual relationship with the defendant. Bollerud's testimony indicated that it was important for diagnosis and treatment of Bryar that she know the defendant's name to ensure that Bryar was always speaking about the same person when he described the source of his intrusive thoughts and the cause of the inappropriate responses that were symptoms of his mental illness. On these facts, the trial court could find Bryar's statements about the defendant's identity and the promises he made to Bryar both descriptive of his symptoms and reasonably pertinent to her diagnosis and treatment of his PTSD and adolescent judgment disorder.

The final test under Rule 803(4) is whether circumstances indicate that the statements are trustworthy. *See* N.H. R. Ev. 803(4). Because we hold that there were sufficient "particularized guarantees of trustworthiness" to satisfy the defendant's right of confrontation, we need not assess whether there were adequate "circumstances indicating their trustworthiness." We assume that the constitutional requirement, which applies only in criminal cases, is more rigorous than the evidentiary standard. For the foregoing reasons, we hold that the trial court properly applied Rule 803(4).

### III. Witness's Privilege and Cross-Examination

The next issue we address is whether the trial court violated the defendant's right of confrontation or abused its discretion by curtailing cross-examination of Scott Shedd. Defense counsel sought to impeach Shedd's credibility at trial by eliciting testimony that cocaine had impaired his memory. In a pretrial deposition, Shedd had not asserted the privilege against self-incrimination and had sworn that he had used drugs, and that his memory was "very, very unclear." At trial, Shedd testified that he had heard the defendant offer Bryar inducements not to testify, and that he had used marijuana and alcohol while he was with Bryar, but he asserted the privilege against self-incrimination in response to cross-examination questions on whether he had used cocaine. The trial court accepted Shedd's assertion of the privilege under part I, article 15 and the fifth amendment. The defendant argues that the trial court erred in finding Shedd unavailable for cross-examination relating to his use of cocaine, and that this finding violated the defendant's confrontation right.

Consistent with *Ball*, 124 N.H. at 231, 471 A.2d at 351, we consider the defendant's confrontation clause arguments under

part I, article 15 of the State Constitution. We refer to cases decided under the sixth amendment only to aid our State constitutional analysis. *See State v. Gravel*, 135 N.H. 172, 176, 601 A.2d 678, 680 (1991). The opportunity to impeach a witness's credibility through cross-examination is an incident of rights guaranteed by part I, article 15 of the State Constitution. *See State v. Benoit*, 126 N.H. 6, 21, 490 A.2d 295, 306 (1985); *cf. Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986); *Brown v. Powell*, 975 F.2d 1, 3 (1st Cir. 1992), *cert. dismissed*, — U.S. —, 113 S. Ct. 1035 (1993). Trial courts have "broad discretion" to limit the scope of cross-examination. *State v. Ramos*, 121 N.H. 863, 866, 435 A.2d 1122, 1124 (1981); *cf. Van Arsdall*, 475 U.S. at 679. No constitutional violation results from a trial court's restrictions on questions designed to impeach credibility if defense counsel has been allowed to elicit from the witness "sufficient information . . . from which the jury can adequately gauge the witness's credibility." *United States v. Burke*, 738 F.2d 1225, 1227 (11th Cir. 1984); *see also United States v. Kaplan*, 832 F.2d 676, 683–84 (1st Cir. 1987), *cert. denied*, 485 U.S. 907 (1988); *Ramos*, 121 N.H. at 866–67, 435 A.2d at 1124.

■ In this case, defense counsel's inquiry into Shedd's credibility satisfied the requirements of part I, article 15. The jury could infer that Shedd used cocaine from his assertion of the privilege on the stand. *See Kaplan*, 832 F.2d at 684 ("The invocation of the privilege acts as a form of impeachment."); *United States v. Seifert*, 648 F.2d 557, 560–61 (9th Cir. 1980). Bollerud testified that cocaine impairs an abuser's memory. The jury actually heard Shedd read from his earlier deposition transcript that his use of "a lot of drugs and alcohol" during the relevant time period had rendered his memory "very, very unclear." At least thirty-six times, Shedd stated, "I don't remember," "I don't recall," or otherwise manifested memory defects in response to questions posed by counsel. The jury required no further information to conclude that drugs had impaired Shedd's ability to remember relevant events. We find no clear error of a constitutional magnitude in the trial court's decision to allow the witness's privilege against self-incrimination to curtail cross-examination on his use of cocaine. Because the sixth amendment does not offer this defendant protections exceeding those afforded by part I, article 15, we need not make a separate federal analysis in this case. *Cf. Brown*, 975 F.2d at 5 (finding no error in trial court's limitation on cross-examination where jury could assess witness's bias and defendant was afforded minimum threshold level of inquiry).

We next consider whether the trial court properly exercised its discretion in accepting Shedd's assertion of the privilege against self-incrimination under the State and Federal Constitutions. The defendant argues that reversible error resulted from the trial court's failure to review Shedd's deposition testimony to determine whether Shedd could rely on the privilege at trial.

 The defendant's argument is unavailing, to the extent it suggests that the trial court erred by failing to examine Shedd's admissions in the deposition transcript. We need not consider this argument because we find that nothing in the pretrial deposition could have waived the witness's right to assert the privilege at trial. It is well-settled that after voluntarily revealing self-incriminating information, a witness may not assert the fifth amendment to squelch requests for elaboration. *See Rogers v. United States*, 340 U.S. 367, 373 (1951). However, "[i]t is hornbook law that the waiver [of the privilege] is limited to the particular proceeding in which the witness appears." *United States v. Cain*, 544 F.2d 1113, 1117 (1st Cir. 1976). The majority rule preserves a witness's right to assert the privilege in subsequent, distinct stages of a single proceeding. *See United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir.), *cert. denied*, 439 U.S. 1005 (1978); *United States v. Johnson*, 488 F.2d 1206, 1210 (1st Cir. 1973) (noting that testimony before grand jury or other "preliminary and separate proceeding" does not waive right to assert privilege at trial) (quotation omitted); 1 McCORMICK ON EVIDENCE, *supra* § 140, at 528; *cf. State v. Lavallee*, 119 N.H. 207, 210, 400 A.2d 480, 482 (1979) (finding that witness could assert privilege to avoid testifying at trial on matters she addressed during probable cause hearing, despite her prior admission to court that she had perjured herself during probable cause hearing).

The rule that a loss of privilege lasts no longer than the distinct stage at which the witness testified is "consistent with the spirit of the privilege," because it recognizes that a witness's admissions in a second appearance may exceed those previously made. 1 McCORMICK ON EVIDENCE *supra; see also State v. Settle*, 132 N.H. 626, 635, 570 A.2d 895, 900 (1990). Nothing in the record in this case, for example, indicates that Shedd previously testified to *specific instances of cocaine use*, as opposed to use of "a lot of drugs."

 More similar to an examination of a witness at trial than either a grand jury appearance or a pretrial exchange of affidavits, a deposition subjects a witness to timely, effective cross-examination under oath and generates a potentially admissible transcript that is

available to all parties. Cases finding that a waiver of the privilege extends beyond the stage of the case in which a witness was responsive either involve inapposite facts, *see, e.g., United States v. Parcels of Land*, 903 F.2d 36, 43 (1st Cir. 1990) (holding that interested party's affidavit opposed to motion for summary judgment and government's deposition to explore facts asserted in affidavit do not constitute distinct proceedings), or do not recognize that later assertions can offer further incriminating information, *see, e.g., Ellis v. United States*, 416 F.2d 791, 801 (D.C. Cir. 1969). Using federal case law only as an aid in our analysis of the State constitutional question, *see Gravel*, 135 N.H. at 176, 601 A.2d at 680, we find that a pretrial deposition is a distinct proceeding for the purpose of determining the effect of a waiver of the privilege against self-incrimination under part I, article 15. We hold, therefore, that the trial court did not violate the defendant's right to confront witnesses and properly found Shedd's assertion of the privilege valid.

### IV. Evidence of Homosexual Relationship

The final argument that we consider on the merits is whether the trial court erred in admitting testimony of the defendant's homosexual relationship with Bryar. The defendant contends that such evidence was irrelevant and unfairly prejudicial.

The State introduced evidence that the defendant provided Bryar drugs and money in exchange for sex, and Bollerud explained the possible psychological impact of a homosexual relationship on an adolescent male. The trial court found the testimony admissible as evidence of a prior bad act for proof of motive, N.H. R. Ev. 404(b), and as generally more probative than prejudicial for aiding the jury's understanding of other evidence.

■■■■ The decision to admit prior wrongs or bad acts as proof of motive is discretionary. *State v. Simonds*, 135 N.H. 203, 206, 600 A.2d 928, 930 (1991). Testimony of a relationship in which sex was exchanged for drugs and money constitutes evidence of a prior wrong or offense. A three-pronged test governs its admissibility: "First, the evidence must be relevant for a purpose other than to prove character or disposition. Second, there must be clear proof that the defendant committed the prior offense. Third, the probative value of the evidence must not be substantially outweighed by the danger of prejudice." *Id.* A defendant must show that the trial court's ruling was "clearly untenable or unreasonable to the prejudice of his [or her] case." *Id.* (quotation omitted).

To obtain a conviction under the witness tampering statute, the State had to show that the defendant believed Bryar was a potential witness. *Kilgus*, 125 N.H. at 742, 484 A.2d at 1211. Indictments underlying the case charged the defendant with conspiracy to purchase drugs, with obscenity for showing an explicit film to a minor, and with prostitution for transporting Bryar to engage in sex for consideration. Testimony that Bryar had stated he received drugs and money in exchange for sex made the defendant's actual belief of Bryar's status as a witness more probable. Such testimony also rendered more likely the State's version of why the defendant promised Bryar cash, a car, and a Canadian address. *Cf. State v. Whitney*, 125 N.H. 636, 638–39, 484 A.2d 1158, 1160 (1984) (holding that evidence of prior convictions is proof of motive for witness tampering). On these facts, the trial court could find clear proof of the defendant's complicity in the prior wrong and relevant evidence of his motive for removing Bryar as a witness.

The defendant contends that unfair prejudice resulted from evidence of his homosexual relationship with Bryar. The inquiry for the trial court under Rules 403 and 404(b) is whether the danger of unfair prejudice to the defendant substantially outweighs the probative value of the evidence. *State v. Trainor*, 130 N.H. 371, 375, 540 A.2d 1236, 1239 (1988). To reverse a conviction, the defendant must demonstrate that the trial court's discretionary ruling was clearly untenable or unreasonable to the prejudice of his case. *State v. Cochran*, 132 N.H. 670, 672, 569 A.2d 756, 757 (1990).

Although evidence of a defendant's homosexual relationships may be prejudicial where it is not central to the State's case, *see United States v. Gillespie*, 852 F.2d 475, 478–79 & n.2 (9th Cir. 1988), testimony of the defendant's offer of drugs and money in exchange for sex was relevant proof of a central issue in the witness tampering prosecution. The evidence was probative of the defendant's belief that Bryar could be a witness in the underlying prostitution and drug conspiracy cases. *See Kilgus*, 125 N.H. at 742, 484 A.2d at 1212. Furthermore, the record indicates that counsel screened the jury panel with *voir dire* questions on homosexuality, *cf. State v. Hood*, 131 N.H. 606, 608, 557 A.2d 995, 996–97 (1989) (noting that whether evidence is prejudicial concerns its effect on jurors). With respect to the relevant evidence of a prior wrong—a relationship in which drugs and money were exchanged for sex—the defendant has failed to establish that the trial court's ruling was clearly untenable or unreasonable to his prejudice. *See Simonds*, 135 N.H. at 206, 600 A.2d at 930.

The defendant argues that unfair prejudice resulted from Trottier's testimony that Bryar's probation officer alerted her to a police investigation of "sexual-abuse issues" in Bryar's relationship with the defendant. Although the notice of appeal did not discuss the admissibility of this statement, we consider it because it is subsidiary to the question of prejudice resulting from testimony on the defendant's homosexual relationship with Bryar. SUP. CT. R. 16(3)(b).

In a pretrial colloquy with counsel, the trial court cautioned the State not to use statements describing the relationship as "sexual abuse." At trial, the court admitted Trottier's statement with an instruction that it was not "offered for the truth of its contents," but as a description of information provided to Trottier.

Taken only as a description of information provided to Trottier, the statement was relevant and probative. It cast light on Trottier's expectations for Bryar's therapy sessions and aided the jury in assessing her ability to report accurately statements she attributed to Bryar.

The court's limiting instruction lessened the risk of unfair prejudice. In addition, we are not convinced that the defendant would have been in a better position if the statement had been excluded. *See State v. McCue*, 134 N.H. 94, 107, 589 A.2d 580, 588 (1991); *State v. Allen*, 128 N.H. 390, 397–98, 514 A.2d 1263, 1268 (1986). Jurors would have drawn similar inferences from other evidence that the forty-three-year-old defendant had offered drugs and money for sex with Bryar, a seventeen-year-old with a history of drug abuse, and from evidence that Bryar believed his weakness for money had been exploited by the defendant in their relationship. The defendant has failed to establish that the admission of the statement with a limiting instruction was clearly untenable or unreasonable to the prejudice of his case.

The defendant also argues that the trial court erred in admitting Bollerud's expert testimony that adolescent males may be confused by their physiologic responses to homosexual experiences, which she described explicitly. Earlier testimony suggested that Bryar was manipulative and had expressed a desire to seek revenge against the defendant. The trial court could find that Bollerud's expert testimony about a young man's responses to homosexual experiences explained dimensions of Bryar's psychological problems, demonstrated Bryar's belief that therapy sessions were confidential, and consequently countered inferences that revenge motives led Bryar to discuss in therapy his relationship with the defendant. The trial court

could have found Bollerud's statements more probative than prejudicial for these purposes, especially because her brief, explicit description of physiologic responses to sexual arousal was clinical, as opposed to lurid, and would not have induced an emotionally-charged reaction. *See Cochran*, 132 N.H. at 672, 569 A.2d at 757.

We hold that the trial court did not abuse its discretion in admitting evidence of the defendant's homosexual relationship with Bryar. The defendant has not demonstrated that admitting such evidence was clearly untenable or unreasonable to the prejudice of his case. *Id.*

## V. Issues Not Preserved

The defendant raises three issues in the brief that were neither presented to the trial court, nor included in the notice of appeal. These are: (1) that venue was improper in Carroll County for the indictment charging that the defendant purchased a car in Merrimack County to induce Bryar to testify falsely; (2) that the State failed to produce sufficient evidence of "process outstanding" for conviction under an indictment charging that the defendant offered an apartment in Canada to induce Bryar to "elude legal process"; and (3) that introduction of evidence regarding the defendant's provision of drugs to Bryar was prejudicial error. The defendant's failure to raise these issues below and in the notice of appeal forecloses our review. *See State v. Peterson*, 135 N.H. 713, 714–15, 609 A.2d 749, 750–51 (1992); *State v. McAdams*, 134 N.H. 445, 446, 594 A.2d 1273, 1273–74 (1991); *State v. Menard*, 133 N.H. 708, 712, 584 A.2d 752, 754–55 (1990); SUP. CT. R. 16(3)(b); 1 C. WHARTON, CRIMINAL PROCEDURE § 34, at 189 (C. Torcia 13th ed. 1989).

In summary, we hold that RSA 625:4, I(b) provided the trial court territorial jurisdiction, that admission of the therapists' testimony complied with the rules of evidence and all constitutional mandates, that the limit on the cross-examination of Scott Shedd was a legitimate exercise of discretion, and that admission of evidence of homosexuality was not error. For the foregoing reasons, we affirm.

*Affirmed.*

THAYER, J., concurred specially; the others concurred.

THAYER, J., concurring specially: I concur in parts I, III, IV and V of the majority opinion. While I disagree with the analysis in part II, I concur in the result. *See State v. Cook*, 135 N.H. 655, 666, 610 A.2d 800, 807 (1992) (Thayer, J., concurring specially).