McLaughlin v. Moore                    CV-00-218-M    05/22/01  P

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Robert A. McLaughlin, Sr.,
      Petitioner

      v.                                Civil No. 00-218-M
                                        Opinion No. 2001 DNH 098
Michael W. Moore,
      Respondent


## O R D E R


Robert McLaughlin, Sr., appearing pro se, petitions for a
writ of habeas corpus, challenging his state court convictions
for first degree murder and conspiracy to commit murder. See 28
U.S.C. § 2254. The State moves to dismiss McLaughlin's petition,
arguing that it is time barred. Alternatively, the State says
the record conclusively demonstrates that McLaughlin is not
entitled to habeas relief. McLaughlin objects.


## Procedural History

On the evening of June 1, 1988, McLaughlin and his wife
drove to the home of their neighbor, Robert Cushing. While his
wife stood guard, McLaughlin approached the entrance and rang the
door bell. As Cushing opened the door, McLaughlin shot him twice

with a shotgun.  McLaughlin and his wife fled the scene, disposed of the weapon in a nearby river, and returned home.  Shortly after the crime, McLaughlin confessed to both his son and a friend, police officer Victor DeMarco.  He was subsequently indicted on charges of first degree murder and conspiracy to commit murder.  At his trial, McLaughlin admitted shooting Cushing, but claimed that he was not guilty by reason of insanity.[1]  Specifically, McLaughlin argued that he was suffering from depression, frequent panic attacks, anxiety, and suicidal tendencies, and, on the night of the shooting, was under the influence of a substantial amount of Xanax and alcohol.

In support of his insanity defense, McLaughlin called several expert witnesses.  Dr. Edward Rowan, a forensic psychiatrist, testified to McLaughlin's medical and mental history, his treatment by other psychiatrists and psychologists, his use of the prescription medication Xanax, and his history of depression, panic attacks, anxiety, suicidal ideation, and alcohol abuse.  See Trial transcript at 628-59.  Dr. Rowan also

_____

[1]     In the alternative, McLaughlin argued that he was guilty of the lesser charge of second degree murder.  See Trial transcript at 1103.

2

testified about how and why he believed McLaughlin reached the decision that, "I think I'll kill Cushing," (trial transcript at 643) and why he concluded that McLaughlin was "delusional" on the night of the shooting.  Id. at 656.

Dr. Rick Silverman, a psychologist, described the extensive battery of psychological tests he had given McLaughlin, explained the results of those tests as well as those administered by other experts, and described the bases for his conclusions that McLaughlin was unable to cope with the stresses in his life, experienced problems with alcohol and Xanax, suffered from post-traumatic stress disorder, and had problems associated with impulse control.  Id. at 714-59.  Dr. Thomas Lynch, another psychologist called by the defense, testified extensively about his treatment of McLaughlin for anxiety, depression, acute panic attacks, insomnia, and suicidal thoughts.  Id. at 760-828.  Dr. Lynch also reported that he had referred McLaughlin to Dr. Potter, McLaughlin's family physician, who prescribed Xanax to control his anxiety and panic attacks.  Id. at 776-77.

In his closing argument, counsel for McLaughlin forcefully argued that the evidence of record compelled the conclusion that, on the night of the shooting, McLaughlin was depressed and under the influence of alcohol and an overdose of Xanax.  Consequently, argued defense counsel, McLaughlin was unable to form the requisite specific intent to murder Mr. Cushing - that is, McLaughlin's actions were not premeditated nor did he deliberate prior to driving to Cushing's home and shooting him.  See Trial transcript at 1080-1129.  Notwithstanding counsel's argument and the evidence introduced to support that line of defense, the jury convicted McLaughlin of first degree murder and conspiracy to commit murder.

McLaughlin appealed his convictions to the New Hampshire Supreme Court.  There, he raised two issues.  First, he challenged a portion of the trial court's jury instructions, arguing that they improperly instructed the jury on aspects of his insanity defense.  Next, he claimed that incriminating statements made by his wife and co-conspirator to the couple's son were improperly admitted at trial.  As to the issue concerning the jury instructions, the court ruled that McLaughlin

4

waived any challenge, since he failed to raise a timely objection at trial. And, as to the evidentiary issue, the court concluded that his wife's statements were properly admitted under Rule 804 of New Hampshire's Rules of Evidence and their admission did not violate his rights under the Confrontation Clause of the Sixth Amendment. Accordingly, the court affirmed McLaughlin's convictions. State v. McLaughlin, 135 N.H. 669 (1992).

McLaughlin subsequently filed a petition for writ of habeas corpus in the New Hampshire Superior Court (Rockingham County). In that petition, McLaughlin asserted that: (1) he was denied his constitutionally protected right to effective assistance of counsel; (2) "newly discovered evidence" relating to the intoxicating effects of Xanax and Halcion (another drug he claimed to have taken on the night of the shooting), if introduced at trial, would have supported his insanity defense; (3) "newly discovered evidence" revealed that his wife and co-conspirator was "on mind altering drugs" and had a personal interest in making incriminating statements against McLaughlin; and (4) McLaughlin's son "was an incredible witness, which counsel did not pursue." State Petition for Habeas Corpus at 6-

5

7. On October 24, 1994, the superior court denied McLaughlin's petition.

Nearly three years later (well beyond the 30-day limit imposed by New Hampshire law), McLaughlin appealed that decision to the New Hampshire Supreme Court. By order dated December 4, 1997, the court declined to accept his appeal. Nearly two-and-one-half years after that, McLaughlin filed a petition for writ of habeas corpus in this court. In it, he alleges three grounds for relief: (1) his trial counsel was ineffective and failed to adequately investigate the combined effect of Halcion and Xanax on his mental state; (2) the trial court improperly instructed the jury as to the scienter element of first degree murder; and (3) the introduction of various statements at trial deprived him of his rights under the Confrontation Clause of the Sixth Amendment.

Upon initial review of McLaughlin's petition, the court (Muirhead, M.J.) noted that the petition appeared to be barred by the one year limitations period imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") and determined that

McLaughlin had not satisfied his burden of showing that he had exhausted state remedies relative to all of his claims. Accordingly, McLaughlin was ordered to amend his petition to demonstrate exhaustion, and explain why it was not time barred.

After reviewing the amended petition filed by McLaughlin, the Magistrate Judge concluded that he had adequately alleged exhaustion of his claims. Next, the Magistrate Judge turned to the timeliness of McLaughlin's petition and discussed McLaughlin's argument as to why the court should not rule his petition out of time.

> Finally, to get around the statute of limitations deadline, McLaughlin asserts that he has presented a "cognizable claim of 'actual innocence,'" and a "fundamental miscarriage of justice" will result if his claims are not considered.

McLaughlin v. Moore, No. 00-218-M, slip op. at 12 (Aug. 1, 2000). Noting that "proper consideration of McLaughlin's actual innocence claims requires a more fully-developed record than that which is included in McLaughlin's petition," id. at 14-15, the Magistrate Judge ordered that the petition be served on the State and directed it to file an answer or responsive pleading. The

7

State has complied and moves to dismiss McLaughlin's petition. McLaughlin objects and, in support of that objection, has filed several documents (consisting mainly of newspaper and magazine articles) relating to Halcion's potential side effects.

## Discussion

McLaughlin's petition suffers from two defects. First, his claim concerning the allegedly improper jury instructions was procedurally defaulted in state court. Thus, in order to pursue that claim in this forum, he must satisfy the "cause and prejudice" test or, in the alternative, demonstrate that a fundamental miscarriage of justice would result if he were not allowed to pursue that claim. See Sawyer v. Whitley, 505 U.S. 333, 338-39 (1992) ("Unless a habeas petitioner shows cause and prejudice, a court may not reach the merits of . . . procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . . [Nevertheless,] even if a state prisoner cannot meet the cause and prejudice standard, a federal court may hear the merits of the successive claims if the failure to hear the claims would constitute a 'miscarriage of justice.'") (citations omitted). A

8

fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).

Second, and perhaps more importantly, unless McLaughlin can identify a basis upon which to equitably toll the limitations period established by AEDPA, his entire petition must be denied as untimely. See 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.").[2] In support of both his assertion that AEDPA's one-year limitation period should be tolled and his argument that the court should address his procedurally defaulted claim, McLaughlin argues that his petition falls within recognized exceptions to procedurally defaulted and untimely habeas claims.

---

[2] Petitioners, like McLaughlin, whose convictions became final prior to the effective date of AEDPA, are afforded a one-year grace period beginning on April 24, 1996 (the date on which AEDPA became effective) and ending on April 24, 1997, within which to file. See Rogers v. United States 180 F.3d 349, 354-55 (1st Cir. 1999)(adopting the one-year grace period for petitions filed under 28 U.S.C. § 2255), cert. denied, 528 U.S. 1126 (2000). McLaughlin filed his section 2254 petition in this court on May 1, 2000, more than three years after that grace period expired.

9

The Magistrate Judge previously addressed and properly rejected all but one of McLaughlin's arguments for tolling the one year limitation period imposed by AEDPA. McLaughlin v. Moore, No. 00-218-M, slip op. at 6-12 (D.N.H. Aug. 1, 2000). The sole remaining argument for equitable tolling is McLaughlin's assertion that he has adequately stated a cognizable claim of "actual innocence" and demonstrated that a fundamental miscarriage of justice will occur if the court does not address the merits of his facially untimely petition. Although the Magistrate Judge concluded that the record was insufficiently developed to allow him to resolve that issue, he did observe that "assertions of actual innocence may justify the consideration of § 2254 petitions otherwise time-barred by the AEDPA." Id. at 13.

Typically, a petitioner raises a claim of "actual innocence" when he or she cannot otherwise demonstrate "cause and prejudice" for a procedural default. Whether a claim of "actual innocence" can also serve to avoid AEDPA's statute of limitations is a more cloudy issue that few courts have directly addressed. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 114 (2d Cir. 2000) ("[U]nless [petitioner] can demonstrate that he is

10

actually innocent of the charges to which he pleaded guilty, we need not reach the question of whether the Constitution requires an 'actual innocence' exception to AEDPA's statute of limitations."). See also Alexander v. Keane, 991 F.Supp. 329, 334-40 (S.D.N.Y. 1998) (discussing in detail, but ultimately avoiding, the question of whether a petitioner's "actual innocence" will toll AEDPA's limitations period).

Further complicating McLaughlin's claim is the fact that the evidence upon which he relies to demonstrate his asserted innocence has been available to him for several years; the written material attached to his objection (document no. 9) is all dated on or before 1994. In fact, that material and his claims concerning Halcion were the subject of his 1994 state habeas corpus petition. Accordingly, he easily could have presented that evidence in support of a timely section 2254 petition. While it is unclear whether a claim of actual innocence can operate to toll AEDPA's statute of limitations, it is even less clear that such an equitable tolling principle can be invoked by a petitioner who failed to exercise reasonable diligence in pursuing his federal claims. For example, Judge

11

Siler, writing for seven judges of an equally divided en banc Court of Appeals for the Sixth Circuit, concluded that, "if a prisoner purposefully or by inadvertence lets the time run under which he could have filed his petition, he cannot file a petition beyond the statutory time, even if he claims 'actual innocence.'" Workman v. Bell, 227 F.3d 331, 342 (6th Cir. 2000) (affirmed by equally divided en banc court).

As discussed more fully below, however, because McLaughlin has failed to make an adequate showing in support of his claimed actual innocence of his state crimes of conviction, even if the one-year statute of limitations could be tolled to permit the court to address an otherwise untimely habeas corpus petition, McLaughlin would not benefit from such a rule.

I.   Actual Innocence and Procedurally Barred Petitions.

"Actual innocence" is a "narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." Burks v. DuBois, 55 F.3d 712, 717 (1st Cir. 1995). Although the Supreme Court has yet to address whether actual innocence is available to overcome a statute of

limitations bar, it has identified two circumstances in which a habeas petitioner might invoke the exception, thereby allowing a reviewing federal court to address otherwise procedurally barred claims.  While those situations arose in the context of death-row inmates' petitions for habeas relief, the court will assume that remedies available to "actually innocent" petitioners are the same for capital and non-capital defendants.  As the United States District Court for the Northern District of Illinois observed:

> The State suggests that the "actual innocence" exception is only available in capital cases.  The Seventh Circuit has never expressly held that to be true, and decisions in other circuits suggest that the "actual innocence" exception is available in non-capital cases.  Indeed, this is the only reading that makes sense.  How can it be unconstitutional to execute someone who is innocent, but constitutional to jail him?

Hinton v. Snyder, 128 F. Supp. 2d 1165, 1171 (N.D. Ill. 2001) (citations omitted).  See also Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999) (suggesting that the "actual innocence" or "fundamental miscarriage of justice" exception is available to non-capital defendants), cert. denied, 528 U.S. 1082 (2000);

<u>United States v. Barrett</u>, 178 F.3d 34, 57 (1st Cir. 1999) (same),

<u>cert.</u> <u>denied</u>, 528 U.S. 1176 (2000).


The first situation in which a claim of "actual innocence" might arise occurs when a petitioner acknowledges that his trial was fair and free of constitutional defects but, because he claims to be actually innocent of the crime of conviction, says the punishment imposed on him violates the Eighth Amendment.  <u>See</u> <u>Herrera v. Collins</u>, 506 U.S. 390 (1993).  The second occurs when a petitioner claims that his criminal trial was tainted in some manner that violates the Constitution (e.g., ineffective assistance of counsel) and argues that because he is actually innocent of his crime of conviction, the court should excuse his failure to adhere to the procedural rules applicable to habeas corpus petitions and, instead, consider the merits of his constitutional claims.  <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). The Court explained the distinction as follows:

> As a preliminary matter, it is important to explain the difference between Schlup's claim of actual innocence and the claim of actual innocence asserted in <u>Herrera v. Collins</u>, 506 U.S. 390 (1993).  In <u>Herrera</u>, the petitioner advanced his claim of innocence to support a novel substantive constitutional claim, namely, that the execution of an innocent person would violate the

14

> Eighth Amendment. Under petitioner's theory in
> Herrera, even if the proceedings that had resulted in
> his conviction and sentence were entirely fair and
> error free, his innocence would render his execution a
> "constitutionally intolerable event."
>
> Schlup's claim of innocence, on the other hand, is
> procedural, rather than substantive. His
> constitutional claims are based not on his innocence,
> but rather on his contention that the ineffectiveness
> of his counsel, and the withholding of evidence by the
> prosecution, denied him the full panoply of protections
> afforded to criminal defendants by the Constitution.

Schlup, 513 U.S. at 313-14 (citations omitted). Here,

McLaughlin, like the petitioner in Schlup, does not claim that

his asserted "actual innocence" has itself given rise to any

constitutional violation relative to his continued imprisonment.

That is to say, he does not challenge his sentence on grounds

that he was wrongfully convicted notwithstanding a

constitutionally error-free trial. Instead, he presents a claim

of actual innocence as a means by which to justify this court's

consideration of his otherwise untimely Strickland claims and his

procedurally barred challenge to the state trial court's jury

instructions - attacks upon his underlying state convictions.

His challenge is, therefore, what has come to be known as a

"gateway" claim of actual innocence. See Schlup, 513 U.S. at 315

("Schlup's claim of innocence does not by itself provide a basis

15

for relief.  Instead, his claim for relief depends critically on the validity of his <u>Strickland</u> and <u>Brady</u> claims.  Schlup's claim of innocence is thus 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'") (citation omitted).

To meet his threshold burden of proof, McLaughlin must point to sufficient evidence suggesting his actual innocence to undermine confidence in his state court convictions.  Again, the Supreme Court's opinion in <u>Schlup</u> is instructive.

> If there were no question about the fairness of the criminal trial, a <u>Herrera</u>-type claim would have to fail unless the federal habeas court is itself convinced that those new facts unquestionably establish Schlup's innocence.  On the other hand, if the habeas court were merely convinced that those new facts raised sufficient doubt about Schlup's guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error, Schlup's threshold showing of innocence would justify a review of the merits of the constitutional claims.

<u>Id.</u> at 317.  In the latter category of habeas corpus petitions (into which McLaughlin falls), the petitioner must show "that a constitutional violation has probably resulted in the conviction

of one who is actually innocent." Id. at 327. And, to satisfy

that burden, the petitioner must demonstrate that "it is more

likely than not that no reasonable juror would have convicted him

in the light of the new evidence." Id.

In other words, that standard "requires the district court

to make a probabilistic determination about what reasonable,

properly instructed jurors would do. Thus, a petitioner does not

meet the threshold requirement unless he persuades the district

court that, in light of the new evidence, no juror, acting

reasonably, would have voted to find him guilty beyond a

reasonable doubt." Id. at 329. In her concurrence, Justice

O'Connor explained: "This standard is higher than that required

for prejudice, which requires only a reasonable probability that,

absent the errors, the factfinder would have had a reasonable

doubt respecting guilt. Instead, a petitioner does not pass

through the gateway erected by Murray v. Carrier, 477 U.S. 478

(1986), if the district court believes it more likely than not

that there is any juror who, acting reasonably, would have found

the petitioner guilty beyond a reasonable doubt." Id. at 333-34.

17

II.  <u>Actual vs. Legal Innocence</u>.

Having identified the burden of proof imposed on petitioners asserting "gateway" claims of actual innocence, the court next considers the State's claim that McLaughlin's factual allegations are not properly viewed as an assertion of actual innocence and must, instead, be viewed merely as a claim of legal innocence. If the State is correct, McLaughlin cannot avail himself of the fundamental miscarriage of justice or "actual innocence" exception, even if that exception could, under appropriate circumstances, serve to toll AEDPA's limitations provision.

In order to show that he is actually innocent, a petitioner "must show a fair probability that, <u>in light of all the evidence</u>, . . . the trier of facts would have entertained a reasonable doubt about his guilt." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 455 n.17 (1986) (citation omitted) (emphasis supplied). Thus, there is a meaningful distinction between a claim of "actual innocence" and a claim of "legal innocence." In the latter category a petitioner does not assert that he or she is factually innocent, but instead argues, for example, that inadmissible evidence led to his or her conviction, or that the evidence admitted at trial

18

was legally insufficient to support a conviction. See <u>Bousley v.</u> <u>United States</u>, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."). See also <u>United States v.</u> <u>Barrett</u>, 178 F.3d 34, 57 (1st Cir. 1999).

What is somewhat unusual about McLaughlin's petition - rendering more difficult the determination as to whether he properly claims "actual" or merely "legal" innocence - is that he does not deny that he fatally shot Robert Cushing. Instead, he says that although he caused the death of his victim, he is "innocent" of first degree murder since, at the time of the shooting, he suffered from drug and alcohol-induced intoxication and, therefore, did not have the culpable mental state essential for first degree murder. In response, the State suggests that McLaughlin cannot demonstrate his actual innocence, since: (1) he concedes that he shot Cushing; and (2) under New Hampshire law, "intoxication is not, as such, a defense." N.H. Rev. Stat. Ann. ("RSA") 626:4. Importantly, however, New Hampshire criminal law provides that while intoxication is not a defense, evidence of intoxication may be introduced "whenever it is relevant to negate

19

an element of the offense charged, and it shall be taken into consideration in determining whether such element has been proved beyond a reasonable doubt." Id. Here, McLaughlin plainly asserts that, if the jury had been presented with a full and accurate picture of the true extent of his intoxication, it would have acquitted him of first degree (i.e., deliberate or premeditated) murder and conspiracy to commit murder. See RSA 630:1-a and RSA 629:3.

That (as the State argues) McLaughlin might have been found guilty of a lesser charge, is of no significance. The focus must necessarily remain on whether a petitioner has demonstrated his or her actual innocence of the crime(s) of conviction.

> Although a prototypical example of "actual innocence" is the case where the State has convicted the wrong person of the crime, one is also actually innocent if the State has the "right" person but he is not guilty of the crime with which he is charged. Should [petitioner's] contention that he could not deliberate prove true, he would have been incapable of satisfying an essential element of the crime for which he was convicted. This meets the definition of actual innocence. Although [petitioner] is responsible for the victim's death in the sense that he was the causative agent that inflicted the mortal wounds, his alleged incapacity to form the predicate deliberative intent, without which he could not have been found

20

> guilty of capital murder, differentiates his claim from
> one of mere legal innocence.

Jones v. Delo, 56 F.3d 878, 883 (8th Cir. 1995)(citations and internal quotation marks omitted) (emphasis supplied). See also Britz v. Cowan, 192 F.3d 1101, 1103 (7th Cir. 1999) (holding that if acquitted on grounds of insanity, a defendant is actually innocent of murder, notwithstanding the fact that he caused the death of his victim).

Nevertheless, it is unclear from McLaughlin's petition and subsequent filings whether he truly advances a claim of actual innocence or merely one of legal innocence. His pleadings might plausibly be read to assert that, due to ineffective assistance of trial counsel, the jury was not presented with additional (but readily available) evidence of McLaughlin's intoxication on the night of the shooting - i.e., his alleged use of Halcion. Viewed in that light, McLaughlin's claim would appear to be one of insufficiency of the evidence. That is to say, one might interpret McLaughlin's petition as asserting that if the jury had been presented with evidence concerning his alleged use of Halcion, that would have tipped the scales and compelled the jury

21

to find that his diminished capacity - caused by the combined effects of alcohol, Xanax, and Halcion - precluded him from forming the requisite criminal intent.  Such a claim, however, is not legally distinct from an assertion that if the jury had been presented with additional evidence concerning, say, the quantity of alcohol he had consumed, it would then have had sufficient evidence to find him not guilty by reason of insanity.  In short, such a claim advances the following theory: evidence of one more drink of alcohol or one more drug that he had taken on the night in question would have persuaded all rational jurors that McLaughlin was sufficiently intoxicated to be unable to form the requisite culpable state of mind.  If that is McLaughlin's position, it must be viewed as a claim of legal, rather than actual, innocence because it focuses on the weight of the evidence presented to the jury and argues that a bit more evidence of his general state of intoxication would have been sufficient to obtain an acquittal.

If, on the other hand, McLaughlin is asserting that the intoxicating effect of Halcion necessarily precluded him from forming the requisite criminal intent, that claim would properly

be viewed as one of actual innocence.  In other words, if McLaughlin could credibly assert that Halcion like, for example, Rohypnol (also known as the "date rape drug"), precludes anyone who is under its influence (particularly someone who is also under the influence of alcohol and Xanax) from forming cogent, rational thoughts, the court might properly treat his claim as one of actual innocence.  In that case, the argument would focus on an (allegedly) known and predictable effect Halcion has on its users: that it renders all who take it unable to form organized and rational thoughts.  Thus, it would not constitute merely cumulative evidence of general intoxication, but instead would amount to evidence of a unique form of intoxication that, if presented to a jury, would have persuasively established that he was incapable of forming the requisite culpable state of mind.

What McLaughlin claims is not entirely clear.  His filings and references to attached documents might plausibly be read either way.  Accordingly, giving McLaughlin the benefit of the doubt, the court will treat his claim as a valid assertion of actual innocence: i.e., his alleged use of Halcion did not simply `exacerbate his level of intoxication but, instead, actually

precluded him from forming the requisite culpable state of mind prior to shooting his victim.

III. McLaughlin's Evidence of Actual Innocence.

Treating McLaughlin's claim as one of actual innocence, the final inquiry is whether he has pointed to sufficient evidence to warrant the conclusion that, if defense counsel had introduced evidence of his alleged use of Halcion on the night of the shooting, no reasonable juror would have convicted him of first degree murder. On that point, McLaughlin's petition comes up short.

First, the evidence McLaughlin offers to support his claim that he was under the influence of Halcion on the night of the shooting is both weak and contradictory. It consists solely of his unsworn and uncorroborated representation that, prior to shooting Cushing, he had been drinking and taking Xanax and Halcion. Additionally, the source of the Halcion he claims to have taken appears to be the subject of some confusion. In his state habeas petition, McLaughlin represented that "he had been on prescribed nerve medication Xanax and was taking his wife's

24

sleeping medication Halcion . . . The Halcion pills Petitioner was taking with his large dosage of prescribed Xanax, were in fact from his wife's prescription of Halcion." State petition at 3-4 (emphasis supplied). In his federal habeas petition, however, McLaughlin claims that "Petitioner was prescribed to take 0.5 mg of both Halcion and Xanax for some two years." Petition for Habeas Corpus (document no. 1) at 17 (emphasis supplied). Although a copy of his prescription for Xanax was introduced at trial and expert witnesses testified about his use of Xanax and explained why it had been prescribed, McLaughlin has failed to point to any evidence that Halcion was ever prescribed for him, as he now claims.

And, notwithstanding having interviewed McLaughlin and/or engaged in an extensive review of his well-documented and substantial medical history, not one of the expert witnesses who testified at trial made even a single reference to McLaughlin's claimed prescription for or use of Halcion. If, as McLaughlin says, there was "an emerging body of medical research . . . since the 1970's which grew in volume and authenticity in the 1980's" that supported an insanity (or diminished capacity) defense based

25

on the use of Halcion, petitioner's objection at 5, it seems reasonable to assume that even if his legal counsel did not recognize the significance of his alleged prescription for and use of Halcion, at least one of his medical experts would have done so.  This is particularly so in light of the fact that each of those experts fully understood that McLaughlin acknowledged shooting Cushing but was pursuing an insanity defense and each expert realized that he had been retained to examine McLaughlin and testify in support of that line of defense.  Their complete silence on that issue, combined with McLaughlin's conflicting statements as to the source of the Halcion, reflect adversely on McLaughlin's current bald assertion that he had been taking Halcion for as long as two years prior to the shooting and was, in fact, under the influence of Halcion on that night.

Even if McLaughlin had presented plausible facts supporting his claim to have been under the influence of Halcion on the night of the shooting (which he has not), he has failed to show that a person under the influence of Halcion (whether alone or when combined with alcohol and Xanax) is more likely to be incapable of premeditation and/or deliberation than one under the

26

influence of only alcohol and Xanax.  Although he points to some anecdotal evidence suggesting that some criminal defendants (and civil plaintiffs) have successfully demonstrated that Halcion can have an adverse effect on a patient's mental state, he has failed to point to any reliable study or finding supporting his claim that Halcion "cause[s] extreme and uncontrolled psychological changes in persons" using it.  Petition for Habeas Corpus at 17. Thus, he has failed to plausibly suggest a causal connection between Halcion and uncontrollable violent behavior and/or reduced mental capacity.  Simply because one may have committed a violent act while taking Halcion does not establish that Halcion caused or contributed to that violence, or rendered the user incapable of forming the requisite intent for first degree murder.

McLaughlin's reference to a 1991 decision by the British Department of Health to ban sales of Halcion in Great Britain is not very compelling since, according to the materials submitted by McLaughlin, that decision was based on "evidence that the pill is associated with a much higher frequency of side effects, particularly memory loss and depression."  Petition for Habeas

27

Corpus, Exhibit H.  That decision does not appear to have been related in any way to McLaughlin's point – that Halcion might contribute to violent conduct or prevent users from premeditating or deliberating prior to engaging in acts of violence.[3]

At trial, McLaughlin's defense counsel vigorously pursued a diminished capacity defense and presented substantial evidence concerning McLaughlin's depressed mental state, anxiety, suicidal tendencies, and intoxication (from both alcohol and an overdose of Xanax) on the night of the shooting.  Three expert witnesses testified extensively in support of McLaughlin's insanity defense.  And, in his closing, defense counsel repeatedly and forcefully urged the jury to credit that expert testimony and find that the State had failed to prove that McLaughlin killed Mr. Cushing with the requisite premeditation.  In light of the

---

[3]      It is unclear from the record whether Britain has revisited its decision to ban the sale of Halcion.  And, while the documentation submitted by McLaughlin suggests that the Food and Drug Administration has, in response to consumer complaints, investigated the drug's safety, it does not appear that the FDA has concluded that the drug is unsafe or likely to cause dangerous side effects.  As one of the articles submitted by petitioner points out, "Many researchers contend that the media have exaggerated Halcion's dangers. 'This is sensationalism at its worst," says Dr. James Walsh, president of the American Sleep Disorders Associations.  'There is no scientific justification for this action.'"  Petition for Habeas Corpus, Exhibit H.

vigor with which counsel pursued an insanity defense, additional evidence of McLaughlin having also been under the influence of Halcion (assuming, of course, he could produce such evidence) likely would have been merely cumulative. In any event, the court cannot say that evidence of McLaughlin's use of Halcion would have been sufficiently compelling to warrant a conclusion that, had that evidence been presented and considered in light of the entire record, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

Also counseling against adoption of McLaughlin's position is the fact that the prosecution presented substantial and compelling evidence that, notwithstanding his intoxicated state (regardless of the underlying source of that intoxication), McLaughlin acted with premeditation and deliberation on the evening of the shooting. As the New Hampshire Supreme Court observed, the jury was presented with evidence that: prior to driving to the victim's home, McLaughlin and his wife formulated a moderately elaborate plan to kill Cushing involving, among other things, the use of disguises; McLaughlin and his wife both brought weapons to the victim's home - she carried a karate staff

29

and he carried a shotgun; McLaughlin's wife stood guard while he approached the victim's door; after McLaughlin shot Cushing, the pair quickly fled the scene and disposed of the murder weapon; McLaughlin confessed to his son that he shot Cushing "to pay this guy back" for a multi-year grudge he held; and, notwithstanding his claim to have been so intoxicated as to have been unable to form the requisite criminal intent, McLaughlin remembered events of that evening six weeks later when he confessed to his son, and nearly three months later when he confessed to Officer Victor DeMarco.  See State v. McLaughlin, 135 N.H. at 670-71.

Despite having heard substantial evidence and expert testimony concerning McLaughlin's intoxication, a reasonable juror certainly could have credited the State's witnesses and found his course of conduct, and subsequent recollection of the events in question, to be the product of "a mind capable of deliberation and premeditation."  Wilson v. Greene, 155 F.3d 396, 405 (4th Cir. 1998).  McLaughlin has failed to plausibly suggest that additional evidence related to his intoxication defense - in the form of testimony concerning his alleged use of Halcion, as well as Xanax and alcohol, prior to and on the evening of the

30

shooting - would have so undermined the compelling evidence establishing both deliberation and premeditation that no reasonable juror would have voted to convict. Consequently, the court cannot conclude that, if presented with the additional evidence of intoxication upon which McLaughlin relies, "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327.

As the Supreme Court has held, to prevail on an actual innocence claim, the petitioner must not merely demonstrate that "a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found [him] guilty." Id. at 329. McLaughlin has not met that burden. See generally Simpson, 175 F.3d at 210 (holding that defendant was "far from being able to claim actual innocence" in light of compelling evidence of his guilt); Mathenia v. Delo, 99 F.3d 1476, 1481-82 (8th Cir. 1996) (concluding that evidence that defendant announced his intention to retaliate against his victims and drove two blocks to commit the second murder, would have permitted a rational fact-finder to conclude that he deliberated

31

before killing his victims even if evidence of his prior institutionalization and mental health history had been presented); McQueen v. Scroggy, 99 F.3d 1302, 1318 (6th Cir. 1996) (concluding that in light of compelling evidence of defendant's guilt and notwithstanding evidence of his intoxication, "there was no plausible claim of actual innocence."); Nave v. Delo, 62 F.3d 1024, 1032-33 (8th Cir. 1995) (holding that in light of substantial evidence of defendant's guilt, even if jury had been presented with evidence of his intoxication, it still "probably would have convicted [him] of capital murder.").

## Conclusion

McLaughlin's petition for habeas corpus relief was filed in May of 2000, well beyond the statutory one-year limitations period established by AEDPA. None of the issues raised in that petition involves "newly discovered evidence" in the sense that such evidence was unavailable to McLaughlin in 1997, when a timely petition could have been filed. In fact, when he petitioned the State court for habeas relief in 1994, McLaughlin raised precisely the same issues on precisely the same grounds he

32

now advances in this court.  Then, as now, he claimed that "new evidence" concerning the effects of Halcion undermined the jury's conclusion that he acted with deliberation and premeditation prior to killing Mr. Cushing.  After that petition was denied, McLaughlin inexplicably waited nearly three years before filing an untimely appeal to the New Hampshire Supreme Court.  And, he then inexplicably waited another two-and-one-half years before filing a federal habeas petition.  He has advanced no justifiable explanation for why he could not have pursued those same claims in this court in a timely manner.

As to McLaughlin's assertion that his "actual innocence" of first degree murder justifies consideration of his otherwise time-barred and procedurally defaulted claims, he has failed to demonstrate entitlement to such relief, even assuming an actual innocence exception to the statute of limitations.  Moreover, since McLaughlin plainly knew that he had been taking Halcion for two years prior to, and on the evening of, the shooting (assuming, of course, that was actually the case), and because he possessed evidence concerning what he calls the "Halcion defense" since at least 1994, it is doubtful that McLaughlin could invoke

equitable relief given his lack of diligence in pursuing his federal habeas claim.

Plainly, AEDPA was designed and intended to encourage petitioners to file timely claims, before evidence becomes stale, witnesses' memories fade, records are mislaid, etc. Here, notwithstanding his assertion of "actual innocence," McLaughlin waited more than three years after AEDPA's grace period expired before presenting his federal claims, despite the fact that he has possessed all the evidence upon which he currently relies for more than six years. There is at least some judicial authority suggesting that even if an actual innocence exception to AEDPA's time limitation must necessarily be inferred, that exception is not available to petitioners who fail to pursue their claims in a diligent manner. See Workman v. Bell, supra.

In summary, the State's evidence concerning McLaughlin's behavior prior to and following the murder amounted to substantial and compelling proof of McLaughlin's premeditation and deliberation. McLaughlin has failed to plausibly show: (1) that he was actually taking Halcion on or before the night of the

shooting; or (2) even assuming he was taking Halcion, that it is more likely than not that, if presented with such evidence, no reasonable juror would have convicted him of first degree murder or conspiracy to commit murder; or (3) even if he had sufficiently demonstrated his "actual innocence" and assuming such evidence might, in some cases, warrant the tolling of AEDPA's limitation period, that such an equitable tolling principle may be invoked by a petitioner who failed to pursue his or her claims in a diligent and reasonably prompt, albeit untimely, manner.

Because McLaughlin has failed to demonstrate that the court may properly address the substance of his procedurally defaulted and time-barred claims, the State's motion to dismiss (document no. 8) is granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 22, 2001

cc:  Robert A. McLaughlin, Sr.
     Stephen D. Fuller, Esq