Cobb v. Warden, NHSP                    CV-03-071-M    12/08/03

                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


David Cobb,
      Petitioner

      v.                                  Civil No. 03-017-M
                                          Opinion No. 2003 DNH 214
Jane Coplan, Warden
New Hampshire State Prison,
      Respondent


                         **O R D E R**


      David Cobb, a state prisoner, seeks habeas corpus relief

from his multiple state court convictions for attempted felonious

sexual assault, exhibiting or displaying child pornography, and

possession of child pornography.  He complains that he was denied

effective assistance of trial counsel and that at least some of

his convictions were obtained in violation of First Amendment

guarantees.  See generally 28 U.S.C. § 2254.


      Specifically, Cobb says that some of the pornographic

depictions of children that led to his convictions were actually

"collages that contained components made by juxtaposing adult

nude bodies with cut-outs [of children's faces taken] from

children's catalogs."  Petitioner's memorandum in support of

habeas petition (document no. 1) at 1. Thus, says Cobb, "there were no actual children used or exploited in the creation of the collages." Id. Consequently, he asserts that, at least as to those particular pornographic depictions of children, his conduct is protected by the First Amendment and cannot serve as the basis for a criminal prosecution or conviction. Moreover, Cobb says his trial counsel's performance was constitutionally deficient insofar as she failed to raise any defense based upon the First Amendment (at least as to charges based upon collages).

The State, asserting that Cobb is not entitled to the relief he seeks, moves for summary judgment. Cobb Objects. While Cobb's petition implicates interesting questions concerning the scope of First Amendment protections afforded pornography in general and, in particular, so-called "virtual" child pornography, he has failed to point to any genuine issues of material fact that, if resolved in his favor, might preclude summary judgment in favor of the State.

**Background**

In May of 1996, Cobb was convicted of one count of attempted felonious sexual assault, fifty-three counts of displaying child pornography, and two hundred and sixty-seven counts of possessing child pornography. He was sentenced to serve eight to fifteen years in the New Hampshire State Prison, where he is presently incarcerated.

Following trial, Cobb appealed his convictions to the New Hampshire Supreme Court, raising twelve distinct issues for the court's review. After addressing and rejecting each of Cobb's assertions of error, the court affirmed his convictions. State v. Cobb, 143 N.H. 638 (1999). The state court's opinion was issued on June 24, 1999. Cobb had 90 days from that date - until September 22, 1999 - to file a petition for a writ of certiorari in the United States Supreme Court. He did not. Accordingly, at that point, his convictions became final.

On September 22, 2000, the one-year limitations period established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2241, et seq., during which Cobb could

file a federal petition for habeas corpus, lapsed. He did not file a federal petition before the statutorily prescribed window of opportunity closed (nor did he file any state collateral attack on his convictions during that period).

On May 2, 2002, more than two and one-half years after his convictions became final, Cobb filed a "Motion for New Trial and Petition for Habeas Corpus" in the state superior court. In that petition, Cobb raised two issues he did not advance in his direct appeal: that his convictions violate the First Amendment, and a derivative claim that he received ineffective assistance of trial counsel - the claims he now seeks to pursue in this forum. In August of 2002, the state superior court issued a written order denying his habeas petition. State v. Cobb, No. 95-S-535-F (N.H. Super. Ct. Aug. 15, 2002) (the "State Habeas Decision"), attached to petitioner's amended petition (document no. 4). Subsequently, on November 18, 2002, the New Hampshire Supreme Court declined to accept Cobb's appeal. Approximately two months later, on January 14, 2003, Cobb filed the presently-pending petition for federal habeas corpus relief under 28 U.S.C. § 2254.

4

**Discussion**

I.    Cobb's Habeas Corpus Petition is Untimely.

In support of its motion for summary judgment, the State says Cobb's petition is untimely, since it was filed after the deadline established by AEDPA.  Accordingly, says the State, the petition must be dismissed.

With regard to the pertinent limitations period, the court of appeals for this circuit has observed:

> AEDPA, which became effective on April 24, 1996, fixes a one-year limitations period for federal habeas petitions by state prisoners.  Statutory exceptions exist where the state impeded relief, new constitutional rights were created by the Supreme Court, or newly discovered facts underpin the claim, but [petitioner] does not claim to fall within any of these exceptions.  Absent an exception, AEDPA's one-year limit runs from the time that the state court judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking it.

David v. Hall, 318 F.3d 343, 344 (1st Cir.) (citations omitted) (emphasis supplied), cert. denied, 157 L. Ed. 2d 30 (2003).  Like the petitioner in David, Cobb does not claim that any of the statutory exceptions apply to him.  See 28 U.S.C. §§ 2244(d)(1)(B) through (D).  Consequently, barring any tolling of

5

the statutory limitations period, the time within which Cobb could have filed a federal habeas corpus petition expired on September 22, 2000 - that is, one year after he could no longer file a timely petition for a writ of certiorari to the United States Supreme Court.

Importantly, AEDPA does provide that the one-year limitations period applicable to state inmates is tolled for that period of time during which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). In this case, however, Cobb did not file a state petition seeking collateral review of his convictions until well after AEDPA's limitations period had already expired. As noted above, that period lapsed on September 22, 2000. Cobb did not file his state habeas petition until May 2, 2002 - more than one and one-half years later. Consequently, AEDPA's limitation period was not (nor could it have been) tolled by the pendency of Cobb's state habeas petition; that period had already lapsed well before Cobb ever filed his state petition and there was nothing left of it to toll. See, e.g., Voravongsa v. Wall, __ F.3d ___,

2003 WL 22660660 at *6 (1st Cir. Nov. 12, 2003) ("With no predicate State post-conviction application having been filed in a timely manner, [petitioner] is not entitled to have the time-limitations period of § 2244(d)(1) tolled by virtue of § 2244(d)(2).").

## II.  AEDPA's Limitation Period and Equitable Tolling.

Although Cobb's argument is unclear, he seems to acknowledge (at least implicitly) that his federal petition for habeas corpus relief is untimely.  Nevertheless, he appears to assert that AEDPA's one-year limitations period should be equitably tolled, since he advances a claim that he is "actually innocent" of some of the charges for which he was convicted and sentenced.  The court disagrees.

Typically, a federal habeas petitioner raises a claim of "actual innocence" when he or she seeks to advance a claim that was procedurally defaulted in state court and the petitioner cannot otherwise meet the "cause and prejudice" prerequisite to federal review of defaulted claims.  "Whether a claim of 'actual innocence' can also serve to avoid AEDPA's statute of limitations

7

is a more cloudy issue that few courts have directly addressed."
McLaughlin v. Moore, 152 F. Supp. 2d 123, 128 (D.N.H. 2001).

In this case, Cobb's claim to the benefit of equitable tolling suffers from several shortcomings.  The first, and perhaps most substantial, is that neither the Supreme Court nor the court of appeals for this circuit has held that AEDPA's one year limitations period applicable to state prisoners may be equitably tolled.  See, e.g., David, 318 F.3d at 346 (noting that "section 2244(d) comprises six paragraphs defining its one-year limitations period in detail and adopting very specific exceptions.  Congress likely did not conceive that the courts would add new exceptions and it is even more doubtful that it would have approved of such an effort.").  See also Donovan v. State of Maine, 276 F.3d 87, 92 (1st Cir. 2002).

> Nothing is changed here by David's claim of actual
> innocence, a claim itself derived from his mistaken-
> colloquy argument.  In general, defendants who may be
> innocent are constrained by the same explicit statutory
> or rule-based deadlines as those against whom the
> evidence is overwhelming: pre-trial motions must be
> filed on time, timely appeals must be lodged, and
> habeas claims must conform to AEDPA.  In particular,
> the statutory one-year limit on filing initial habeas
> petitions is not mitigated by any statutory exception

8

> for actual innocence even though Congress clearly knew
> how to provide such an escape hatch.

David, 318 F.3d at 347 (noting that Congress did adopt a form of

"actual innocence" test with regard to the statutory provisions

governing the filing of second or successive petitions).

Second, even assuming that AEDPA's one-year limitations

period is subject to equitable tolling, such extraordinary relief

is available only in the most compelling of circumstances.  As

the David court observed:

> If equitable tolling is available to extend section
> 2244(d)'s limitations period, it can only do so for the
> most exceptional reasons.  One of AEDPA's main purposes
> was to compel habeas petitions to be filed promptly
> after conviction and direct review, to limit their
> number, and to permit delayed or second petitions only
> in fairly narrow and explicitly defined circumstances.
> To bypass these restrictions for reasons other than
> those given in the statute could be defended, if at
> all, only for the most exigent reasons.

Id. at 346 (citations omitted)(emphasis supplied).  See also

Donovan, 276 F.3d at 93 ("We have made it pellucid that equitable

tolling, if available at all, is the exception rather than the

rule; and that resort to its prophylaxis is deemed justified only

in extraordinary circumstances.") (citations and internal

9

punctuation omitted); Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001) ("In short, equitable tolling is strong medicine, not profligately to be dispensed."). Cobb's case does not present the sort of compelling or extraordinary circumstances that might justify equitable tolling.

Cobb has wholly failed to justify (or even explain) why his petition was filed more than a year and one-half after the pertinent limitations period expired. While he relies heavily on the Supreme Court's recent opinion in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), in support of his actual innocence claim, he acknowledges that Ashcroft did not recognize a new constitutional right. See Petitioner's memorandum in support of habeas petition at 7 ("Ashcroft has not established a 'new rule' of constitutional law, but rather has reaffirmed the First Amendment rights of individuals."). See generally 28 U.S.C. § 2244(d)(1)© (providing that AEDPA's one-year limitation period begins to run on the date "on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made

10

retroactively applicable to cases on collateral review.")
(emphasis supplied).

Although Cobb does not specifically invoke the tolling
provisions of sections 2254(d)(1) or (2), he seems to suggest
that the constitutional protections afforded to "virtual
pornography" were only recently recognized, in Ashcroft. He is,
however, incorrect. The Supreme Court recognized, more than
twenty years ago, that some types of so-called "virtual
pornography" fall within the protections of the First Amendment:

> We consider it unlikely that visual depictions of
> children performing sexual acts or lewdly exhibiting
> their genitals would often constitute an important and
> necessary part of a literary performance or scientific
> or educational work. . . . [I]f it were necessary for
> literary or artistic value, a person over the statutory
> age who perhaps looked younger could be utilized.
> Simulation outside the prohibition of the statute could
> provide another alternative.

New York v. Ferber, 458 U.S. 747, 762-63 (1982) (footnote
omitted). As the Ashcroft court noted, "Ferber, then, not only
referred to the distinction between actual and virtual child
pornography, it relied on it as a reason supporting its holding."
Ashcroft, 535 U.S. at 251.

11

Thus, the claims Cobb seeks to raise in his untimely section 2254 petition - both of which are based on his assertion that "virtual" child pornography of the sort he possessed is protected by the First Amendment - were available to him long before AEDPA's one-year limitations period expired. Cobb tends to acknowledge the point when he asserts that his trial counsel's performance was constitutionally deficient insofar as she failed to raise that First Amendment defense during his trial. Consequently, the court can discern no equitable basis to excuse his failure to raise those available claims in a timely manner. See, e.g., Donovan, 276 F.3d at 94. As this court recently observed, even assuming an "actual innocence" claim can, under appropriate circumstances, toll AEDPA's limitations period, it is unlikely that a petitioner can avail himself of such equitable relief if he fails to present known claims within AEDPA's one-year limitations period.

> Further complicating [petitioner's] claim is the fact
> that the evidence upon which he relies to demonstrate
> his asserted innocence has been available to him for
> several years . . . Accordingly, he easily could have
> presented that evidence in support of a timely section
> 2254 petition. While it is unclear whether a claim of
> actual innocence can operate to toll AEDPA's statute of
> limitations, it is even less clear that such an

12

> equitable tolling principle can be invoked by a
> petitioner who failed to exercise reasonable diligence
> in pursuing his federal claims.

McLaughlin, 152 F. Supp. 2d at 128 (emphasis in original).  See

also Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001) ("Even

where available, equitable tolling is normally appropriate only

when circumstances beyond a litigant's control have prevented him

from filing on time.  In the usual case, a court may deny a

request for equitable tolling unless the proponent shows that he

was actively misled or prevented in some extraordinary way from

asserting his rights.") (citation and internal quotation marks

omitted).

In sum, then, even assuming AEDPA's one-year limitations

period may, in appropriate cases, be subject to equitable

tolling, this is not such a case.

III. Cobb's Petition Lacks Merit.

Finally, even if the court were to conclude that Cobb's

situation presents sufficiently compelling circumstances to

warrant equitable tolling of AEDPA's limitations period, Cobb

would not be entitled to the habeas relief he seeks.

13

A.    AEDPA's Standard of Review.

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited.  A federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Alternatively, habeas relief may be granted if the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  See also Williams v. Taylor, 529 U.S. 362, 399 (2000).

Here, Cobb attacks the underlying state court decision pursuant to section 2254(d)(1).  So, to prevail on his petition, he must demonstrate that the state habeas court's rejection of his ineffective assistance claim and/or his First Amendment claim

14

was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.

The United States Supreme Court recently explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court also noted that an "incorrect" application of federal law is not necessarily an "unreasonable" one.

> [T]he most important point is that an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law . . . . Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply

15

because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11 (emphasis in original).

B. Cobb's "Collages" and Supreme Court Precedent.

Cobb asserts that, in light of the Supreme Court's opinion in Ashcroft, supra, the collages that led to at least some of his convictions are protected by the First Amendment. Consequently, he says the state court's rejection of his First Amendment claim was contrary to or involved an unreasonable application of clearly established federal law, as interpreted by the Supreme Court, entitling him to federal habeas relief. Again, however, he is incorrect.

Because the central thesis of Cobb's argument is that the collages leading to some of his convictions constituted "virtual pornography" (which he claims is protected by the First Amendment), it is appropriate to examine the nature of the child pornography at issue in this case. The pornographic material underlying Cobb's convictions fell into two categories:

16

photographs of actual naked children and the so-called collages.

At least some of the photographs of actual children were obtained

from black market child pornography books and magazines.  See

State Habeas Decision at 9.  The collages were described by the

state supreme court as follows:

> The items at issue are Polaroid photographs.  The
> photographs generally fall into the following
> categories: adult nude bodies juxtaposed with fully
> clothed children; composite images containing the
> sexually immature bodies or body parts of children
> either depicted by themselves, with or without a face,
> or juxtaposed with the faces of adults or other
> children, some altered by the addition of hand-drawn
> pubic hair; and nude bodies that have been altered by
> the addition of children's heads.

State v. Cobb, 143 N.H. at 642.  Later in its opinion, the court

concluded that, "[a] review of all the photos at issue supports

the conclusion that each depicts a child engaged in sexual

activity as defined [by state law]."  Id. at 645 (emphasis

supplied).


In Ashcroft, the Supreme Court considered challenges to

various provisions of the Child Pornography Prevention Act of

1996, 18 U.S.C. § 2251, et seq. (the "CPPA").  In particular, the

Court addressed whether 18 U.S.C. §§ 2256(8)(B) and (D) could

17

withstand constitutional scrutiny.  The litigants did not
challenge, nor did the Court speak to the constitutionality of
section 2256(8)(C).

In describing the scope of section 2256(8)(B), the Court
observed that it:

> prohibits "any visual depiction, including any
> photograph, film, video, picture, or computer or
> computer-generated image or picture" that "is, or
> appears to be, of a minor engaging in sexually explicit
> conduct."  The prohibition on "any visual depiction"
> does not depend at all on how the image is produced.
> The section captures a range of depictions, sometimes
> called "virtual child pornography," which include
> computer-generated images, as well as images produced
> by more traditional means.  For instance, the literal
> terms of the statute embrace a Renaissance painting
> depicting a scene from classical mythology, a "picture"
> that "appears to be, of a minor engaging in sexually
> explicit conduct."  The statute also prohibits
> Hollywood movies, filmed without any child actors, if a
> jury believes an actor "appears to be" a minor engaging
> in "actual or simulated . . . sexual intercourse."

Ashcroft, 535 U.S. at 241.  As to the sort of images embraced by
that particular section of the CPPA, the Court noted that they
"do not involve, let alone harm, any children in the production
process."  Id.  Consequently, unless those images are also
obscene, "virtual pornography" of that particular type is

18

protected by the First Amendment.  Id. at 240 ("As a general rule, pornography can be banned only if obscene, but under Ferber, pornography showing minors can be proscribed whether or not the images are obscene.").

Cobb's collages are not the sort of "virtual pornography" described by the Court as falling within the scope of section 2256(8)(B), since those collages did involve real children. Images of that sort (or, perhaps more accurately, their computer-age analog) are addressed in section 2256(8)(C), which "prohibits a more common and lower tech means of creating virtual images, known as computer morphing."  Ashcroft, 535 U.S. at 242.  Like Cobb's collages, computer morphing involves altering photographs of actual children to make it appear that those children are engaged in sexually explicit conduct.  See id. (describing "computer morphing" as follows: "Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity.").

19

While the Court did not specifically address the constitutionality of section 2254(8)(C)'s ban on that particular type of "virtual pornography," it did note that "[a]lthough morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in Ferber." Id. Although not part of the Court's holding, that dictum strongly suggests that Cobb's collages are not protected by the First Amendment.[1]

Unlike a Renaissance painting of a fictitious subject or a Hollywood movie that employs adult actors who simply

---

[1]   In Ferber, the Court upheld the constitutionality of New York's statutory ban on the distribution of materials that depict a sexual performance by a child.  In reaching the conclusion that child pornography is outside the scope of the protections afforded by the First Amendment, the Court noted that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." Id. at 757.  In support of that conclusion, the Court observed:

> The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children . . . . [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.

Id. at 759 (emphasis supplied).

appear to be minors, Cobb's collages involved pornographic images of real children. In that regard, they implicate concerns identified in both Ferber and Ashcroft, insofar as a lasting record has been created of those children seemingly engaged in sexual activity.

In light of the foregoing, Cobb has not sustained his burden of establishing that the state court's decision rejecting his habeas petition was contrary to or involved an unreasonable application of federal law as determined by the Supreme Court. First, as noted above, the Supreme Court has not held that collages of the sort possessed by Cobb are protected by the First Amendment. See Ashcroft, 535 U.S. at 242 ("Respondents do not challenge this provision, and we do not consider it."). In fact, the Court has suggested just the opposite. See generally Ferber, supra. Accordingly, Cobb cannot demonstrate that the state court's decision was "contrary to" Supreme Court precedent.

Nor has he demonstrated that the state court's decision involved an "unreasonable application" of Supreme Court precedent, particularly in light of the Ashcroft dictum noting

21

that morphed images of real children made to appear as though they are engaged in sexual activity likely fall outside the scope of the First Amendment's protections. Cobb's First Amendment claims regarding his collages were resolved by the state superior court as follows:

> [T]he photographs including so-called "morphed" images [i.e., the "collages"] are not protected by the United States Supreme Court's decision in Ashcroft. The Ashcroft Court specifically declined to consider the federal statute dealing with "morphing" and noted that "although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in Ferber."

> * * *

> Although the people whose photographs have been "morphed" were not made to engage in the behavior displayed in the photographs, they are nonetheless victimized each time photographs containing their image are displayed or exhibited.

> Whereas the United States Supreme Court considered the mere possession of virtual child pornography a "victimless" crime, the same cannot be said of the defendant's possession of the charged photographs in this case. Although in the pictures being contested by the defendant live naked children were not made to engage in the particular activities displayed in the photographs, the images of real children were edited to appear as though the children were engaged in sexual conduct. While the children in the morphed photographs may belong to a different class of victims than children made to actually engage in sexual behavior in the production process of child pornography, the

22

children in the morphed photographs are nonetheless actual identifiable human victims, rather than computer-generated virtual images. In other words, morphed photographs create direct and identifiable child victims of sexual exploitation, whereas purely computer-generated virtual child pornography does not, absent additional criminal conduct, directly victimize any particular children. The underlying concerns which informed the Ferber decision, therefore, are implicated by the facts of this case in a manner they were not in Ashcroft.

State Habeas Decision at 13-16. In resolving Cobb's First Amendment claim, then, the state habeas court: (1) properly identified the applicable Supreme Court precedent; and (2) applied that precedent in a thorough and thoughtful way that cannot be deemed "unreasonable." Accordingly, Cobb is not entitled to federal relief under section 2254.

C.   Ineffective Assistance and the "Strickland" Standard.

To prevail on his second claim - that his trial counsel's performance was constitutionally deficient - Cobb must satisfy both elements of a two-part test. First, he must "show, by a preponderance of the evidence, that [his] trial counsel's conduct fell below the standard of reasonably effective assistance." Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001) (citing Strickland v. Washington, 466 U.S. 668, 687

23

(1984)).  Next, he must demonstrate that counsel's errors actually prejudiced his defense.  Id.  See also Cofske v. United States, 290 F.3d 437 (1st Cir. 2002).

With regard to the first prong of the Strickland test, the court employs a highly deferential standard of review in assessing the quality of trial counsel's representation, and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Strickland, 466 U.S. at 689 (citation and internal quotation marks omitted).  In other words, to satisfy his burden, Cobb must demonstrate that his trial attorney made errors that were "so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

To satisfy the second prong of the Strickland test, a petitioner must show "actual prejudice."  That is to say, a petitioner must demonstrate that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome."  Id.

Here, Cobb can satisfy neither one of the two essential elements of a Strickland claim.  First, his defense was not prejudiced by trial counsel's decision not to raise a First Amendment defense to some of the crimes with which Cobb was charged.  As noted earlier, that defense lacks merit, since Cobb's collages were made of photographs of real children altered to appear as though the children were engaged in sexual conduct. He does not claim (nor would the record support a finding) that any of his collages involved computer-generated "virtual" subjects or adults who simply appeared to be children.

Even if Cobb's First Amendment defense had some merit, his trial counsel articulated a reasonable and thoughtful basis for her tactical decision not to attack the so-called "morphed" images or "collages" on First Amendment grounds.  See State Habeas Decision at 4-5 (noting, among other things, that Cobb's

trial counsel testified that she "thought about and analyzed whether the collage could be considered art or otherwise protected speech. She explained, however, that a number of the photographs included pictures of live, naked children and, therefore, she and her co-counsel made a tactical decision not to draw focus to the content of particular photographs. Specifically, [counsel] was concerned that arguing that some of the photographs were not of live, naked children would guarantee conviction on the charges related to photos that were of live, naked children.").[2]

In the context of defending a complex criminal case involving over two hundred pieces of child pornography (some involving pictures of actual children engaged in sexual behavior and others involving the so-called collages), counsel's tactical decision certainly fell well within the range of reasonable trial strategies and, therefore, cannot form the basis of an ineffective assistance claim under <u>Strickland</u>.

---

[2] Cobb does not challenge any of these factual findings made by the state habeas court.

26

Finally, Cobb's related claim - that his attorney provided constitutionally deficient representation by failing to call an expert witness to establish that the collages in question were not "obscene" - is entirely without merit. See Petitioner's memorandum in support of habeas petition at 5-6. As the Supreme Court has clearly stated, the manufacture, possession, and distribution of depictions of real children engaged in sexual conduct may be proscribed absent any additional showing that they are also obscene. See Ashcroft, 535 U.S. at 240 ("As a general rule, pornography can be banned only if obscene, but under Ferber, pornography showing minors can be proscribed whether or not the images are obscene.") (citation omitted).

## Conclusion

AEDPA's one-year limitations period applicable to state inmates seeking federal habeas corpus relief expired more than one and one-half years before Cobb filed his federal habeas petition. Consequently, that petition is untimely.

As for his assertion that AEDPA's limitation period should be tolled, Cobb does not rely upon the discovery of any new (and

27

exculpatory) evidence, nor does he seek the benefit of a new rule of constitutional law, made retroactively applicable to his case by the Supreme Court.  Nor does he assert any state-created impediment to the filing of a timely federal petition. Accordingly, he is not entitled to the benefit of any statutorily prescribed tolling.  See generally 28 U.S.C. § 2244(d).

Although it may be that AEDPA's limitations period is not subject to equitable tolling, even assuming equitable relief is available in extraordinary cases, this is not such a case.  The record reveals no sound basis upon which to rest any decision excusing Cobb's failure to comply with AEDPA's one-year filing deadline.  Cobb offers no plausible excuse (or explanation) for his failure to file a timely petition under section 2254. Instead, he merely seeks equitable relief on the basis of an incorrect assertion that he is "actually innocent" of some of his crimes of conviction.  Under the circumstances presented, he is not entitled to equitable tolling of AEDPA's one-year limitations period, and his petition must be dismissed as untimely.  See 28 U.S.C. 2244(d).

Finally, even if this court were to conclude that Cobb is entitled to the benefit of equitable tolling, his habeas petition would still fail on the merits. It cannot be said that the state court decision rejecting his First and Sixth Amendment claims yielded a result that was contrary to, or involved an unreasonable application of, clearly established federal law as interpreted by the United States Supreme Court. See 28 U.S.C. § 2254(d)(1). Accordingly, respondent's motion for summary judgment (document no. 11) would be granted on the merits.

The petition is dismissed as untimely. The Clerk of Court shall close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 8, 2003

cc:  Paul J. Haley, Esq.
     NH Attorney General